R.L. HOWELL, LAMAR SIMMONS, AND WIFE, DORIS G. SIMMONS, BRUCE B. BLACKMON AND WIFE, LELIA L. BLACKMON, BRUCE B. BLACKMON, JR., KATYE BLACKMON, OSCAR RIVENBARK, J.K. WILLIFORD, AND WIFE, EILEEN WILLIFORD, NORA RIVENBARK v. C. PAGE FISHER and SOIL TESTING SERVICES OF CAROLINA, INC. (IDENTICAL BY CHANGE OF NAME WITH GEOTECHNICAL ENGINEERING COMPANY, INC.)

No. 8011SC340

(Filed 18 November 1980)

**Negligence § 2; Corporations § 6; Rules of Civil Procedure § 19– negligent misrepresentations in soil report – action by stockholders – corporation not necessary party**

A corporation is not a necessary party when stockholders seek damages in their own right for negligent misrepresentations made to them before they were stockholders for the purpose of inducing their investment, and a sufficient legal basis existed to support plaintiffs' allegations of an individual loss, separate and distinct from any damage suffered by the corporation, where plaintiffs alleged that defendants were to prepare a soil testing report to determine the feasibility of mining certain tracts of land leased by the corporation; defendants had express knowledge of the corporation's purpose in obtaining the report; defendants knew the specific persons to whom the report would be shown; defendants knew that the report was intended to induce plaintiffs' investment in the corporation; and plaintiffs did buy capital stock in the corporation for $184,000 and did lend it $204,000.

APPEAL by plaintiffs from *Hobgood, (Robert H.), Judge.* Judgment entered 19 February 1980 in Superior Court, HARNETT County. Heard in the Court of Appeals 8 October 1980.

Plaintiffs sued defendants for the negligent preparation of a soil testing report which induced them to invest in a corporation that is now insolvent. Defendants moved for dismissal of the action pursuant to G.S. 1A-1, Rule 12(b)(6) and 12(b)(7). In its order of 19 February 1980, the court denied the 12(b)(6) motion but granted the 12(b)(7) motion and dismissed the claim for failure to join a necessary party, the corporation.

Plaintiffs made the following allegations in their complaint to support a claim for relief. The individual defendant, C. Page Fisher, is a geologist and professional engineer. He is president of the defendant corporation, a geological engineering firm, which performs soil tests to determine the quality, quantity and value of minerals in land tracts and their mining potential. Defendants prepare written reports and evaluations for per-

sons interested in mining the soil and prospective investors and lenders of mining businesses.

In 1976, Howell Industries, Inc. [hereinafter Howell] was a corporation existing under the laws of this State engaged in mineral exploration with its principal place of business in Harnett County. At that time, Howell was the lessee of four tracts of land in Jones, Pender and Bertie counties. Howell wanted to mine these tracts and therefore requested defendants to prepare a geological feasibility study. On 4 May 1976, Howell and defendants entered into a contract for this purpose. The terms of the contract were incorporated in a letter sent to Howell by Arthur W. Hayes, an agent and principal geologist of defendant corporation. In pertinent part, Hayes stated in the letter: "It is our understanding that you require our services to assist Howell Industries obtain a loan for the mill(s), through a professional statement regarding the feasibility of mining on these tracts. In addition, we understand that you require our assistance in obtaining the four mining permits . . . ."

A soil study of the tracts leased by Howell was conducted, and Hayes sent the following report to Howell 10 June 1976:

> It is our opinion that these varied deposits will provide excellent products for different needs in the State and perhaps, neighboring states. The various strata can produce high-calcium livestock feed supplement, agricultural lime for soil neutralization, road surfacing, and stabilization material, and crushed limestone aggregate for construction. Simple processing, such as crushing, washing, screening, and perhaps some blending is all that would be required to prepare a high-quality product . . . . A conservative estimate of total mass available for extraction is 6.63 million tons. Based upon current prices, the potential gross sales of these materials, f.o.b. plant, is conservatively estimated to be $81.20 million.

Defendants later repudiated this report but agreed to do another study of the four tracts as well as one additional tract that had been acquired by Howell in the interim. In the 27 September 1976 letter disavowing the earlier evaluation, defendant Fisher stated:

> As of this time, I will be the principal of Geotechnical Engineering Company who is responsible for the Howell project . . . .
>
> Dr. Hayes will no longer be associated with the project and I am making contact with those individuals at Branch Banking & Trust Company, North Carolina National Bank, Peat, Marwick, Mitchell & Company, and with various state agencies with whom he had contact in your behalf, to so inform them.

On 12 October 1976, defendants submitted a final study from the soil testing of the five tracts. The report was identical with the previous one except that it estimated the total mass available for extraction at ten million tons with a potential gross sales value of $65.35 million.

Subsequently, between 12 October and 3 December 1976, Dr. C.E. Howard, an agent and employee of defendants, showed the report to plaintiffs. A material allegation in plaintiffs' complaint is that Dr. Howard

> gave copies thereof to the plaintiffs for the purpose of inducing the plaintiffs to invest in the stock of Howell; that Dr. C.E. Howard is a geologist and as such represented to the plaintiffs that, based on said report, an investment in the capital stock of Howell would be a good investment and would return a substantial profit to the investor.

Thereafter, plaintiffs bought capital stock in Howell for $184,000.00 and lent it $204,000.00. Plaintiffs allege that this total investment of $388,000.00 was made in reliance upon defendants' evaluation report of 12 October 1976 and the representations made by defendants' agent, Dr. Howard.

After plaintiffs became stockholders, Howell began mining the Harriet tract. In the course of its operations, it soon discovered that the quality, quantity and value of minerals therein did not conform to defendants' representations in the mining feasibility study. Apparently, defendants had grossly exaggerated and overstated the mineral content in the tracts. Because there were insufficient minerals for mining, Howell became insolvent. Howell is now "defunct, inoperative and is no longer

Howell v. Fisher

engaged in the mining business." Plaintiffs' capital investments and loans to Howell are, therefore, totally worthless.

Plaintiffs brought suit against defendants alleging that they were negligent in conducting the soil tests and in providing incomplete and misleading information about the feasibility of and the potential value to be derived from mining the properties. Plaintiffs sought damages equivalent to their original total investment in Howell ($388,000.00) and punitive damages of $250,000.00. Upon defendants' motion, the court dismissed the action for failure to join the necessary party of Howell. From that dismissal, plaintiffs now appeal.

*Bryan, Jones and Johnson, by James M. Johnson, for plaintiff appellants.*

*Ragsdale and Liggett, by Peter M. Foley, and Manning, Fulton and Skinner, by Howard E. Manning, Jr., for defendant appellees.*

VAUGHN, Judge.

The issue is whether plaintiff-stockholders' suit was properly dismissed under Rule 12(b)(7) for failure to join the corporation as a necessary party. Plaintiffs contend that the court committed error on two alternative bases: (1) that even if the corporation were a necessary party, the action should have been continued to permit joinder; (2) the corporation was not, however, a necessary party because the complaint was an individual claim for personal wrongs done to them by defendants. At the outset, we note that dismissal under Rule 12(b)(7) is proper only when the defect cannot be cured, and the court ordinarily should order a continuance for the absent party to be brought into the action and plead. *Booker v. Everhart*, 294 N.C. 146, 240 S.E. 2d 360 (1978); *Carding Developments v. Gunter & Cooke*, 12 N.C. App. 448, 183 S.E. 2d 834 (1971); Shuford, N.C. Civil Practice and Procedure § 19-3 (1975); 3A Moore's Federal Practice ¶ 19.07-1[3] (2d ed. 1979); 5 Wright & Miller, Federal Practice and Procedure: Civil § 1359 (1969). The record does not indicate that plaintiffs were given an opportunity to join the corporation before dismissal. It is unnecessary, however, to formulate a holding on this question since we agree with plaintiffs' second contention and reverse the dismissal because the corporation, in these circumstances, was not a necessary party.

If shareholders bring an action to enforce a primary right belonging to the corporation, their claim is derivative, and the corporation is a necessary party. *Underwood v. Stafford,* 270 N.C. 700, 155 S.E. 2d 211 (1967); *Swenson v. Thibaut,* 39 N.C. App. 77, 250 S.E. 2d 279, *appeal dismissed,* 296 N.C. 740, 254 S.E. 2d 181 (1979). The well established rule is that shareholders cannot maintain an individual action against third persons for wrongs or injuries to the corporation which result in depreciation or destruction of the value of their stock. *Jordan v. Hartness,* 230 N.C. 718, 55 S.E. 2d 484 (1949); *Hoyle v. Carter,* 215 N.C. 90, 1 S.E. 2d 93 (1939); Annot., 167 A.L.R. 279 (1947). There is, however, a notable exception to the general rule

> which permits a stockholder to maintain an action in his own right for an injury directly affecting him, although the corporation also may have a cause of action growing out of the same wrong, where it appears that the injury to the stockholder resulted from the violation of some special duty owed the stockholder by the wrongdoer and having its origin in circumstances independent of the plaintiff's status as a stockholder.

167 A.L.R. at 285.

Our courts recognize this exception and permit a shareholder to bring an individual cause of action "[i]f he can, in addition, 'allege a loss peculiar to himself,' by reason of some special circumstances or special relationship to the wrongdoers . . . ." Robinson, N.C. Corporation Law § 14-2, at 287 (2d ed. 1974). When the injuries complained of are "peculiar or personal" to the shareholders, the corporation is not a necessary party to the suit since any damages recovered do not pass to the corporation or indirectly to its creditors. *Snyder v. Freeman,* 300 N.C. 204, 266 S.E. 2d 593 (1980); *Underwood v. Stafford,* 270 N.C. 700, 155 S.E. 2d 211 (1967).

In light of the foregoing principles, the question at bar is reduced to whether a legal basis exists to support plaintiffs' allegations of an individual loss, separate and distinct from any damage suffered by the corporation. There are only two possible avenues of recovery: in contract or in tort.

Since this case arises in a contractual setting, we must determine whether plaintiffs may maintain an individual claim

based upon the contract between the corporation and defendants. "It is well settled in North Carolina that where a contract between two parties is intended for the benefit of a third party, the latter may maintain an action in contract for its breach . . . ." *Industries, Inc. v. Construction Co.*, 42 N.C. App. 259, 265, 257 S.E. 2d 50, 55, *discretionary review denied*, 298 N.C. 296, 259 S.E. 2d 301 (1979). An intended beneficiary, despite a lack of privity, may sue on the contract, either for its performance or damages. In addition, the corporation is not a necessary party when a shareholder claims a personal loss for a breach of contract as an intended beneficiary thereof. *Snyder v. Freeman*, 300 N.C. 204, 266 S.E. 2d 593 (1980). Plaintiffs, however, have failed to meet the test for bringing a claim for defendants' breach of contract in these circumstances. "The real test is said to be whether the contracting parties intended that a third person should receive a benefit which might be enforced in the courts." *Vogel v. Supply Co.*, 277 N.C. 119, 128, 177 S.E. 2d 273, 279 (1970); Restatement (Second) of Contracts § 133 (1973). The allegations in plaintiffs' complaint do not establish a claim as intended beneficiaries of the corporation's contract for there is no recital that the contract was entered into for their direct benefit. *Leasing Corp. v. Miller*, 45 N.C. App. 400, 263 S.E. 2d 313, *review denied*, 300 N.C. 374, 267 S.E. 2d 685 (1980). Indeed, the record plainly indicates that the contract for soil testing services was entered into for the corporation's sole benefit to enable it to obtain the necessary loans and permits for its mining operations.

Plaintiffs' complaint does, nonetheless, allege a cause of action based on defendants' negligence. Defendants assert that privity is a threshold obstacle to plaintiffs' claim for individual losses in negligence. We do not agree for two reasons.

First, as a general matter, sound reason dictates that negligence liability be imposed, in appropriate circumstances, to protect the foreseeable interests of third parties not in privity of contract.

> [B]y entering into a contract with A, the defendant may place himself in such a relation toward B that the law will impose upon him an obligation, sounding in tort and not in contract, to act in such a way that B will not be injured. The incidental fact of the existence of

the contract with A does not negative the responsibility of the actor when he enters upon a course of affirmative conduct which may be expected to affect the interests of another person.

Prosser, Handbook of the Law of Torts § 93, at 622 (4th ed. 1971). In several recent cases, this Court has held that a third party, not in privity of contract with a professional person, may recover for negligence which proximately causes a foreseeable economic injury to him. *Condominium Assoc. v. Scholz Co.*, 47 N.C. App. 518, 268 S.E. 2d 12 (1980) (condominium owners may recover for an architect's negligent design of a water pipe system); *Leasing Corp. v. Miller*, 45 N.C. App. 400, 263 S.E. 2d 313, *review denied*, 300 N.C. 374, 267 S.E. 2d 685 (1980) (equipment lessor may recover for a lawyer's negligent failure to discover the existence of a lien on property used as collateral in a leasing agreement); *Browning v. Levien & Co.*, 44 N.C. App. 701, 262 S.E. 2d 355, *review denied*, 300 N.C. 371, 267 S.E. 2d 673 (1980) (builders may recover from an architectural firm for negligent over-certification to the construction lender of the amount of work performed by a contractor) [*see also Kornitz v. Earling & Hiller, Inc.*, 49 Wis. 2d 97, 181 N.W. 2d 403 (1970)]; *Industries, Inc. v. Construction Co.*, 42 N.C. App. 259, 257 S.E. 2d 50, *review denied*, 298 N.C. 296, 259 S.E. 2d 301 (1979) (a contractor may recover for an architect's negligence in approving defective materials and workmanship).

Second, and more particularly, plaintiffs' claim is an action for negligent misrepresentation which may be brought, absent privity of contract, to recover pecuniary loss. *See* Prosser, Handbook of the Law of Torts § 107 (4th ed. 1971); 57 Am. Jur. 2d, Negligence §§ 49, 51 (1971). In essence, plaintiffs allege a two-fold basis for defendants' liability: (1) negligence in the misrepresentations of the soil content in the test reports which defendants knew would be used to induce plaintiffs to become stockholders in the corporation; and (2) negligence in the affirmative misrepresentations of Dr. Howard, defendants' agent, to plaintiffs that "based on said report, an investment in the capital stock of Howell would be a good investment and would return a substantial profit to the investor."

An action for negligent misrepresentation by third persons lacking privity to recover economic loss has only recently

gained acceptance, but it now appears to be the prevailing American law. Prosser, *Misrepresentation and Third Persons*, 19 Vand. L. Rev. 231 (1966). The action was long resisted on grounds similar to Chief Judge Cardozo's oft-quoted fears in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 179-80, 174 N.E. 441, 444 (1931):

> If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences.

In *Ultramares*, the Court refused to impose negligence liability upon an accountant to a third party for negligent preparation of a balance sheet. The defendant was aware that his client would use the financial statement to obtain extensive credit. The defendant was, however, unaware of the names or numbers of possible lenders to whom the sheet would be shown. Accountant liability has since been imposed for negligent misrepresentations in an audit where the plaintiff was identified and the defendant had special reason to expect his reliance or action. *See American Indemnity Co. v. Ernst & Ernst*, 106 S.W. 2d 763 (Tex. Civ. App. 1937); Annot., 46 A.L.R. 3d 979 (1972). The rationale of *Ultramares* is not, therefore, controlling where the damages to an identified third party are reasonably foreseeable by the defendant. *Tartera v. Palumbo*, 224 Tenn. 262, 453 S.W. 2d 780 (1970) (surveyor hired by purchaser of property may be liable for negligent misrepresentation to plaintiff-owners for losses due to a mistaken description in the warranty deed executed in reliance upon his negligent survey).

In the instant case, there can be little doubt that plaintiffs sufficiently alleged that defendants should have reasonably foreseen the damages they would suffer if the soil reports were incorrect. In the contract, defendants specifically acknowledged that the corporation needed the reports to obtain a loan and stated that they would assist it in this regard. Moreover, the degree of defendants' assistance in the corporation's finan-

---

---

cial activities is indicated in defendant Fisher's letter of 27 September 1976. He stated that he would be "making contact" with the banks the corporation had been dealing with to inform them that his company would be preparing another soil evaluation of the tracts. This fact alone indicates that defendants knew the soil reports were being relied on by the corporation's lenders and investors. Finally, plaintiffs stated that Dr. Howard, defendants' agent, personally delivered and exhibited copies of the report to them for the purpose of inducing them to invest in the corporation. In sum, the complaint alleges that defendants had express knowledge of the corporation's purpose in obtaining the report, the specific persons to whom the report would be shown, and the transaction which it was intended to induce: plaintiffs' investment in the corporation.

In these circumstances, *Glanzer v. Shepard,* 233 N.Y. 236, 135 N.E. 275 (1922), provides the applicable rationale for imposition of liability. In *Glanzer,* a public weigher was negligent in weighing beans for the seller which were subsequently purchased by plaintiff at a loss. The Court held the weigher liable to the purchaser for the negligence because:

> [t]he plaintiffs' use of the certificates was not an indirect or collateral consequence of the action of the weighers. It was a consequence which, to the weighers' knowledge, was the end and aim of the transaction. Bech, Van Siclen & Co. [seller] ordered, but Glanzer Brothers [plaintiff] were to use. The defendants held themselves out to the public as skilled and careful in their calling. They knew that the beans had been sold, and that on the faith of their certificate payment would be made. They sent a copy to the plaintiffs for the very purpose of inducing action. All this they admit. In such circumstances, assumption of the task of weighing was the assumption of a duty to weigh carefully for the benefit of all whose conduct was to be governed.

233 N.Y. at 238-39, 135 N.E. at 275-76. Liability for negligent misrepresentations has been found in many similar cases. For example,

> [t]he defendant is liable where, without proper care, he provides B with a title or weight certificate, an ab-

stract of title, an appraisal, an audit, or a report of a boiler inspection, knowing that B intends to pass it on to C and that C is contemplating action in reliance upon it. The report may even be sent by the defendant to C at the request of B, or the defendant may be informed that B and C expect to act in concert.

Prosser, *Misrepresentation and Third Persons*, 19 Vand. L. Rev. 231, 242 (1966).

The Restatement (Second) of Torts § 552 (1977) is in accord with the *Glanzer* approach. It provides that:

[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

In deference to legitimate fears of "indeterminate" liability to third persons, the Restatement narrows the scope of an action for negligent misrepresentations. The action must be brought by the person or a limited group of persons, to whom defendant intended the information to be supplied, who have suffered a loss in reliance upon the information in a transaction which defendant intended the information to influence. Restatement, *supra*, § 552(2)(a)-(b). Plaintiffs' claim unquestionably comes within the permissible range of negligent misrepresentation actions where it is alleged that defendants prepared the soil test reports with express knowledge that they would be used to induce plaintiffs to invest in the corporation and defendants' agent so advised plaintiffs upon the reliability of the soil reports.

This Court endorsed the Restatement position in *Davidson & Jones, Inc. v. County of New Hanover*, 41 N.C. App. 661, 255 S.E. 2d 580, *review denied*, 298 N.C. 295, 259 S.E. 2d 911 (1979). The Court held that a firm of soil testing engineers could be liable for damages to third party contractors who relied on the reports, which negligently misrepresented the subsurface soil conditions, in submitting their bids.

> In performing its contractual duties, Soil and Material
> Engineering, Inc. was under a common law duty to use
> due care. To the extent that plaintiff and third-party
> defendants have alleged a breach of that duty of due
> care and that the breach was a proximate cause of
> their injury, they have stated a cause of action.

41 N.C. App. at 669, 255 S.E. 2d at 585. In an analogous case, the California Court reversed summary judgment for defendant where plaintiff alleged that it had contracted with a sanitary district to build a sewer system and suffered loss as a result of defendant's negligent preparation of soil tests for the district. *M. Miller Co. v. Dames & Moore*, 198 Cal. App. 2d 305, 18 Cal. Rptr. 13 (1961); *see* Restatement (Second) of Torts § 552, Illustration 9 (1977).

We conclude that plaintiffs have stated an individual claim in negligence for injuries "peculiar or personal" to themselves, which are distinct from any damages suffered by the corporation. In such circumstances, the corporation is not a necessary party to the action. *Snyder v. Freeman*, 300 N.C. 204, 266 S.E. 2d 593 (1980); *Underwood v. Stafford*, 270 N.C. 700, 155 S.E. 2d 211 (1967); Robinson, N.C. Corporation Law § 14-2 (2d ed. 1974). Two further observations are appropriate: (1) plaintiffs' claim is based on a theory of negligence whereas any possible claim by the corporation would probably be on its contract; (2) plaintiffs' claim cannot be a derivative one, on behalf of the corporation, when the alleged negligence occurred before they were even stockholders. *See Sutter v. General Petroleum Corp.*, 28 Cal. 2d 525, 170 P. 2d 898 (1964) (plaintiff-stockholder allowed to individually recover for fraudulent misrepresentations which induced him to form and invest in a corporation).

We hold that a corporation is not a necessary party when stockholders seek damages in their own right for negligent misrepresentations made to them before they were stockholders for the purpose of inducing their investment. Thus, it was error to grant defendants' motion to dismiss under G.S. 1A-1, Rule 12(b)(7).

The judgment appealed from is reversed.

Reversed.

Chief Judge MORRIS and Judge WELLS concur.