PROCESS COMPONENTS, INC. v. BALTIMORE AIRCOIL CO., INC.

No. 8726SC1058

(Filed 19 April 1988)

1. **Damages § 16.3— lost profits—sufficiency of evidence**

   Plaintiff presented sufficient evidence of lost profits so that defendant was not entitled to a directed verdict in plaintiff's breach of contract and unfair and deceptive trade practices action.

2. **Damages § 13.2— lost profits—evidence of another company's sales—admissibility**

   In an action to recover damages for breach of contract and unfair and deceptive trade practices, the trial court did not err in admitting evidence of another company's sales to show plaintiff's lost profits since defendant used those figures to induce plaintiff to enter into a distributorship agreement, and the other company's sales were made in the same geographic area and to the same customers as plaintiff's sales would have been but for the alleged breach.

3. **Unfair Competition § 1— plaintiff promised sole distributorship—false representation—unfair or deceptive trade practice**

   Evidence was sufficient to be submitted to the jury on plaintiff's claim for unfair or deceptive trade practices where it tended to show that defendant represented to plaintiff that it would be the only industrial distributor for defendant's pumps in the Carolinas; defendant represented that another company would handle the building trades part of the market; the other company was in fact never out of the industrial market; and plaintiff presented sufficient evidence to show that it was damaged.

4. **Fraud § 12— false representations—no intent that statements be relied on—insufficient evidence of fraud**

   The trial court did not err in directing a verdict for defendant with respect to plaintiff's claim for fraud where there was evidence that defendant made false representations to plaintiff, but there was no evidence that defendant made them with intent that they be relied on by plaintiff; moreover, plaintiff could not have recovery on both a fraud claim and a claim under N.C.G.S. § 75-1.1 since they would arise from the same course of conduct.

5. **Corporations § 6— right of shareholders to maintain action**

   The individual plaintiffs lacked standing to sue since shareholders generally cannot maintain individual actions against third persons for wrongs or injuries to the corporation which result in depreciation or destruction of the value of their stock.

APPEAL by defendant and plaintiff from *Allen (C. Walter)*, *Judge*. Judgment entered 25 June 1987 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 30 March 1988.

This is a civil action wherein plaintiff seeks actual and punitive damages from defendant for fraud, for breach of contract, and for unfair and deceptive trade practices pursuant to G.S. 75-1.1. The evidence presented at trial tends to show:

Defendant Baltimore Aircoil Company, Inc. (hereafter BAC), manufactures and markets hydraulic pumps. Paco Pumps (hereafter Paco) is a division of BAC through which pumps are sold. BAC depends partly on distributors to get the pumps into the marketplace.

In 1983, Larry Seitz, Wayne Gravitte, James Leshock and Marshall Hollingsworth all worked for Pnucor, a distributor of industrial pumps. When Pnucor and BAC failed to reach an agreement on distributorship, Seitz, Gravitte, Leshock and Hollingsworth all left Pnucor and Gravitte set up Process Components, Inc. (hereafter PROCOM).

BAC had a contract with The Gene Hewitt Company (hereafter Hewitt) as a representative taking orders to be filled by BAC. BAC had grown dissatisfied with Hewitt, and Travis Glover, Southeast Regional Sales Manager for BAC, began representing to PROCOM that Hewitt had been terminated in the "industrial" market.

Glover further indicated to Gravitte that Hewitt remained only in the commercial-building trades market and that PROCOM would be the only industrial market distributor in the Carolinas if they became a Paco distributor. Glover also showed Hewitt's sales figures for 1981, 1982 and 1983 to Gravitte. He continually stated that PROCOM could expect higher returns than those of Hewitt. At numerous meetings, Glover repeated his statements about the possible distributorship.

PROCOM then leased a warehouse and began preparation for a distributorship by obtaining sales leads. PROCOM began holding itself out as a distributor of Paco pumps. A written contract was later signed.

A conflict eventually arose because Hewitt continued to contact some customers which PROCOM believed were "industrial" customers and should have only been contacted by PROCOM. On 24 April 1984 PROCOM's distributorship was terminated because of the conflict. In the letter terminating the distributorship, BAC

Process Components, Inc. v. Baltimore Aircoil Co.

stated there was an existing representative contract with Hewitt which had to remain in effect until it was terminated. PROCOM had no prior knowledge of such a complete representative contract between BAC and Hewitt.

At trial, PROCOM presented evidence of damages in the form of money spent and lost opportunity to make profits. Evidence of expenditures was admitted to show money spent. Evidence of statements made by Glover and of Hewitt's past earnings were admitted to prove lost benefits.

After hearing the evidence, issues were submitted to the jury, and the jury found that PROCOM and BAC had an exclusive distributorship contract, that BAC breached the contract, and that PROCOM was entitled to $1 in damages. The jury further found that BAC falsely represented that Hewitt had been terminated as industrial market representative, that PROCOM was the exclusive industrial distributor for Paco pumps in the Carolinas, and that PROCOM would receive all the parts business for industrial markets in the Carolinas. The jury also found BAC's conduct was in commerce or affected commerce, and that PROCOM was injured in the amount of $210,000. The trial court ruled BAC's conduct violated G.S. 75-1.1 as an unfair or deceptive trade practice, and pursuant to that statute trebled the damages. Defendant and plaintiff appealed.

*William D. Acton, Jr., and Frank B. Aycock, III, for plaintiff.*

*Moore & Van Allen, by Charles E. Johnson, Holly J. Hickman, and Robert J. Greene, Jr., for defendant.*

HEDRICK, Chief Judge.

[1] Liberally construing defendant's brief, it seems defendant contends the trial court erred in denying its motion for directed verdict because plaintiff had not proved damages. In order to recover damages for lost profits, an injured plaintiff must prove its losses with reasonable certainty. *Olivetti Corp. v. Ames Business Systems, Inc.*, 319 N.C. 534, 356 S.E. 2d 578 (1987). Where the action is in tort, as in this case, damages must be the natural and probable result of the tortfeasor's misconduct. *Id.* The measure of damages under G.S. 75-1.1 should also reflect the fact that the cause of action is broader than traditional common law

actions. *Marshall v. Miller*, 302 N.C. 539, 276 S.E. 2d 397 (1981); *Bernard v. Central Carolina Truck Sales*, 68 N.C. App. 228, 314 S.E. 2d 582, *disc. rev. denied*, 311 N.C. 751, 321 S.E. 2d 126 (1984). Here, plaintiff proved some damage. The amount of damages was for the jury, under proper instructions from the court, to decide. We hold the trial court did not err in denying defendant's motion for a directed verdict.

[2]  Defendant next argues the trial court erred by admitting evidence of another company's profits. The record indicates no evidence of Hewitt's past *profits* was admitted, but instead evidence of gross sales was admitted. Even so, the connection between Hewitt's past sales and PROCOM's lost profits is especially strong since defendant used these figures to induce PROCOM into entering into a distributorship agreement. Hewitt's sales were made in the same geographic area and to the same customers as PROCOM's sales would have been. For these reasons, the evidence of Hewitt's prior sales was relevant and therefore admissible. It was for the jury to decide how much weight to give such evidence.

[3]  Defendant further assigns error to denial of its motion for a directed verdict with respect to plaintiff's claim for unfair or deceptive trade practices. G.S. 75-1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." There is no precise definition of unfair or deceptive acts, but whether a particular act is unfair or deceptive depends on the facts surrounding the transaction and the impact on the marketplace. *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 340 S.E. 2d 755, *cert. denied*, 317 N.C. 333, 346 S.E. 2d 137 (1986).

In this case issues were submitted to the jury, and they were answered as follows:

4. Did the Defendant do any one or more of the following:

(a) Falsely represent to the Plaintiff that the Gene Hewitt Company was terminated as Industrial Market Representative for PACO pumps in North and South Carolina?

ANSWER: Yes

(b) Falsely represent to the Plaintiff that the Plaintiff was the exclusive Industrial Distributor for PACO pumps in North and South Carolina?

ANSWER: Yes

(c) Falsely represent to the Plaintiff that the Plaintiff would receive all of the parts business for the Industrial Market in North and South Carolina?

ANSWER: Yes

5. Was the Defendant's conduct in commerce or did it affect commerce?

ANSWER: Yes

6. Was the Plaintiff injured as a proximate result of the Defendant's conduct?

ANSWER: Yes

7. By what amount, if any, has Plaintiff been injured?

ANSWER: 210,000

The trial court found that these answers "establish as a matter of law that defendant injured plaintiff by unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce. . . ." Defendant argues there is insufficient evidence that it made any false representations as found by the jury in issues 4(a), (b) and (c) and insufficient evidence that plaintiff was proximately damaged, and that these issues should not have been submitted to the jury. We disagree.

Wayne Gravitte testified at trial that Travis Glover was "asking for someone who would be their only industrial distributor that would cover that market in the two Carolinas." He also testified that he and Glover discussed PROCOM being the only distributor of pumps in the industrial market and that he indicated PROCOM was not interested in a distributorship unless it had the total market. Gravitte further testified Glover never indicated Hewitt would still be selling in the industrial market and that when asked whether PROCOM was the only industrial distributor in the Carolinas, Glover answered "yes." James Leshock also

testified that his understanding with Glover was that "the Gene Hewitt Company would handle the building trades part of the market as a representative, and that PROCOM would handle, as a distributor, the industrial market." Additional evidence at trial indicates Hewitt was never out of the industrial market as defendant had represented. This evidence is sufficient to raise an inference which would support the jury's answers to issues 4(a) and (b). Gravitte also testified as to discussions about the parts business, and this testimony is sufficient to support issue 4(c). Sufficient evidence was also presented to show plaintiff was proximately damaged. This argument has no merit.

Defendant also contends, based on Assignment of Error No. 5, that the trial court erred in concluding the acts of defendant injured plaintiff in violation of G.S. 75-1.1 because there is insufficient evidence of unfair or deceptive acts or practices and because the issues answered by the jury do not constitute unfair or deceptive acts or practices. G.S. 75-1.1 provides that "unfair or deceptive acts or practices in or affecting commerce" are unlawful. Although there is no precise definition of unfair or deceptive acts or practices, *Concrete Service Corp. v. Investors Group, Inc.*, 79 N.C. App. 678, 340 S.E. 2d 755, *cert. denied*, 317 N.C. 333, 346 S.E. 2d 137 (1986), a practice is generally unfair when it "offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious. . . ." *Johnson v. Insurance Co.*, 300 N.C. 247, 263, 266 S.E. 2d 610, 621 (1980). The evidence of defendant's misrepresentations clearly supports the court's conclusion that defendant's unfair or deceptive acts or practices caused injury to plaintiff.

Finally, defendant assigns error to denial of its motion for directed verdict with respect to plaintiff's claim for damages due to breach of contract. Defendant argues the evidence is not sufficient to show it entered into and breached an exclusive contract with plaintiff. We disagree. As we have stated, testimony indicates defendant represented to plaintiff that plaintiff would have an exclusive distributorship. Evidence further clearly establishes that plaintiff and defendant did enter into a contract and that defendant breached it.

For the reasons set out above, we find no prejudicial error in defendant's appeal.

**[4]** Plaintiff assigns error to the trial court's directing a verdict for defendant with respect to plaintiff's claim for fraud. Our Supreme Court, in *Britt v. Britt*, 320 N.C. 573, 579, 359 S.E. 2d 467, 471 (1987), set out the essential elements of fraud:

> . . . (1) the defendant's false representation of a past or existing fact, (2) defendant's knowledge that the representation was false when made or it was made recklessly without any knowledge of its truth and as a positive assertion, (3) defendant made the false representation with the intent it be relied on by the plaintiff, and (4) the plaintiff was injured by reasonably relying on the false representation.

While there is evidence defendant made false representations to plaintiff, there is no evidence defendant made them with intent they be relied on by plaintiff, and the trial court did not err with respect to defendant's motion for directed verdict. Even if there were evidence to support the fraud claim, plaintiff could not have a recovery on both a fraud claim and a claim under G.S. 75-1.1 since they would arise from the same course of conduct. *Borders v. Newton*, 68 N.C. App. 768, 315 S.E. 2d 731 (1984); *Wilder v. Hodges*, 80 N.C. App. 333, 342 S.E. 2d 57 (1986). Plaintiff's argument has no merit.

Plaintiff next contends the trial court erred by allowing defendant's motion for a directed verdict as to individual plaintiffs' claims. Because the trial court found there was lack of evidence to support a fraud claim, there was no error in not submitting an issue concerning individual plaintiffs' claims of fraud. Since the trial court did not submit an issue of fraud with respect to individual plaintiffs there could also be no conceivable prejudice by the court not allowing evidence of damages by individual plaintiffs.

**[5]** As to other claims, the individual plaintiffs lacked any standing. Generally, shareholders cannot maintain individual actions against third persons for wrongs or injuries to the corporation which result in depreciation or destruction of the value of their stock. *Howell v. Fisher*, 49 N.C. App. 488, 272 S.E. 2d 19 (1980), *disc. rev. denied*, 302 N.C. 218, 277 S.E. 2d 69 (1981). The only exception is where the injury to individual stockholders results from a special duty owed to the stockholder by the wrongdoer and having an origin independent of plaintiff's status as

stockholder. *Id.* This exception would apply if the individual plaintiffs were induced to buy stock because of defendant's representations. There is no evidence of this in the record. All of the claims properly belong to the corporate plaintiff PROCOM, and the argument has no merit.

Plaintiff, in Assignment of Error No. 4, argues the trial court erred in allowing defendant's motion for directed verdict on the punitive damages claim. With respect to the claims of individual plaintiffs, they had no claim at all and therefore there could be no claim for punitive damages. As for the corporate plaintiff, since there was no evidence of fraud there could be no punitive damages awarded. Generally, punitive damages are not awarded for a violation of G.S. 75-1.1. *Hardy v. Toler,* 288 N.C. 303, 218 S.E. 2d 342 (1975). In this case, treble damages were awarded for a violation of G.S. 75-1.1, and for that reason punitive damages for fraud could not be awarded even if fraud could be proven since there cannot be a recovery on both claims arising from the same course of conduct. *Wilder v. Hodges,* 80 N.C. App. 333, 342 S.E. 2d 57 (1986). In plaintiff's appeal we find no error.

The result is on defendant's appeal, no error; on plaintiff's appeal, no error.

Judges EAGLES and COZORT concur.