JERRY H. BARGER, H. WAYNE KENNERLY, AND HARRY G. YOUNG, JR., PLAINTIFFS V. McCOY HILLARD .& PARKS, A NORTH CAROLINA GENERAL PARTNERSHIP, DAVID R. McCOY, MICHAEL W. HILLARD, BRENT H. PARKS AND SHEILA LEE, DEFENDANTS

No. COA94-876

(Filed 3 October 1995)

### 1. Corporations § 146 (NCI4th)— alleged malfeasance of corporation's accountants—action improperly brought by shareholders in individual capacities

Plaintiff shareholders were not entitled to bring an action in their personal capacities against the accounting firm used by their corporation where they alleged that defendants' malfeasance directly and proximately resulted in the bankruptcy of their corporation and the loss of all present and future value in their shares of stock, since the evidence did not support plaintiffs' allegations that the corporation's contracts with defendants were for plaintiffs' direct benefit; the evidence showed that the alleged contracts were entered into at periodic shareholder/director meetings for the sole benefit of the corporation; such contracts would have benefited plaintiffs only indirectly; any loss in the value of plaintiffs' shares as a result of defendants' breach of these alleged contracts was not a loss peculiar to each individual plaintiff, but rather caused loss to stockholders and creditors generally; and these claims therefore could only be asserted by the corporation or by plaintiffs in a derivative suit on behalf of the corporation.

**Am Jur 2d, Corporations §§ 2243-2246, 2249, 2400.**

**Account's malpractice liability to client. 92 ALR3d 396.**

**Liability of independent accountant to investors or shareholders. 35 ALR4th 225.**

### 2. Corporations § 146 (NCI4th)— corporation's accountants—no breach of contract claims of individual plaintiffs

Plaintiffs had no breach of contract claim arising from their personal guarantees of loans made to their corporation based on defendant accountants' representations as to the corporation's financial viability, since one who pays a personally guaranteed corporate debt has not suffered an injury separate and distinct from that of the corporation.

Am Jur 2d, Contracts § 451; Corporations §§ 2243-46, 2249, 2400.

3. **Accountants § 20 (NCI4th); Limitations, Repose, and Laches §§ 26, 37 (NCI4th)— action against accountants— negligent misrepresentation claim barred by statute of limitations—constructive fraud claim not barred**

Plaintiffs' negligent misrepresentation and constructive fraud claims against defendant accountants arising from plaintiff shareholders' personal guarantees of corporate loans reflected a genuine issue of material fact, since it was possible to infer that one defendant was aware plaintiffs would rely on his opinion in personally guaranteeing loans for the corporation and that the parties may have had a relationship of trust which defendants breached to the detriment of plaintiffs. The negligent misrepresentation claim was barred by the three-year statute of limitations, but the constructive fraud claim based upon a breach of fiduciary duty was governed by the ten-year statute of limitations and was not barred.

**Am Jur 2d, Accountants §§ 19, 21; Corporations § 2268; Limitation of Actions § 147.**

**Application of statute of limitations to actions for breach of duty in performing services of public accountant. 7 ALR5th 852.**

Appeal by plaintiffs from order entered 27 April 1994 by Judge William H. Helms in Rowan County Superior Court. Heard in the Court of Appeals 9 May 1995.

Plaintiffs, the sole shareholders and directors of The Furniture House of North Carolina, Inc. ("TFH"), filed this action alleging that defendants, TFH's accountants, negligently misrepresented the financial condition of TFH, breached several contracts for accounting services, and made negligent and constructively fraudulent misrepresentations. These actions allegedly forced plaintiffs to liquidate TFH in a Chapter 7 bankruptcy, and to pay personally guaranteed corporate debts out of private funds. Plaintiffs sought to recover compensatory and punitive damages.

Defendants answered, denying the material allegations of the complaint and asserting several affirmative defenses including, *inter alia*, the statute of limitations. After discovery, defendants moved for summary judgment.

Plaintiffs' evidence tends to show the following: TFH was a North Carolina corporation engaged in the catalog and retail sale of furniture and accessories. Since 1986, plaintiffs were the sole shareholders and directors of TFH. Corporate action was usually conducted in an informal manner, often at periodic breakfast meetings of the shareholders/directors.

After the death of the company's previous accountant and financial advisor in 1986, plaintiffs employed defendant McCoy's firm to provide accounting services and financial advice. Among its services, defendants were to prepare and issue statements showing the financial health of TFH. In late 1987, an independent computer contractor and defendant McCoy allegedly were engaged to create a computer program to format data from TFH computers into a report for defendants so that defendants could produce financial statements on a more regular and timely basis. Plaintiffs term this a "Computer Contract." Defendants subsequently began producing statements based on information in the computer report. However, a misapplication of data from the report resulted in an error that overstated TFH's sales and understated its liabilities in one of the financial statements. The error was not discovered and was carried over in succeeding statements.

Thereafter, defendants continued to provide accounting services for TFH, and defendant McCoy met periodically with the general manager of TFH and plaintiffs to explain the financial statements and to advise them on financial matters. At a breakfast meeting in early 1988, plaintiffs asked McCoy to evaluate whether TFH could amortize the debt necessary for a considered expansion of TFH while continuing to pay its operating costs. Defendant McCoy was allegedly informed that the debt for the expansion would have to be personally guaranteed by plaintiffs. McCoy assured plaintiffs that the necessary debt could be amortized if projected sales targets were reached. Plaintiffs term this a "Feasibility Contract." TFH then took out loans to expand its operations with plaintiffs signing personal guarantees to repay the loans in the event of default. However, the error in the financial statements hid the fact that the debt could not be so amortized.

Sales following TFH's expansion actually exceeded defendant McCoy's projected requirements for amortization of the debt. Nevertheless, TFH experienced a serious cash flow shortage. McCoy explained that the cash flow shortage was temporary and was due to the rapid increase in sales and cash being tied up in inventory and

accounts receivable. McCoy advised that when sales leveled off, the temporary cash flow shortage would be resolved. However, the cash flow shortage continued, and plaintiffs again consulted with defendant McCoy for an explanation and for advice about whether to take personally guaranteed loans to cover the shortage. McCoy restated that the cash flow shortage was temporary. Plaintiffs term this a "Cash Flow Contract." TFH then obtained a line of credit personally guaranteed by plaintiffs, and received advances against it to sustain the company during the shortage.

In late 1989, a prospective buyer approached plaintiffs about purchasing TFH. Plaintiffs asked defendant McCoy for an estimate of the value of TFH at an informal meeting at plaintiff Barger's home. McCoy valued plaintiffs' shares at $800,000. Plaintiffs term this a "Sales Contract." After further discussions, plaintiffs eventually signed a letter of intent to sell TFH for $504,000 and the assumption of plaintiffs' personal guarantees for the company's debts. However, an independent audit of TFH on behalf of the potential buyer revealed the accounting errors. The audit showed that TFH's liabilities greatly exceeded its assets, and that plaintiffs' shares were actually worthless. Consequently, the potential buyer backed out of the deal, and TFH entered Chapter 7 bankruptcy in 1990.

Defendants' evidence indicates that defendant McCoy Hillard & Parks, a North Carolina general partnership, was actually McCoy & Hillard, another general partnership, at the time of the alleged malpractice. Defendants McCoy and Hillard were the sole partners until defendant Parks became a partner in 1991.

Under a compilation agreement between defendants and TFH beginning in 1987, defendants were to issue monthly financial statements based on information supplied by TFH, but stated they would not audit or review such statements, nor express an opinion or other form of assurance on them. Defendants' evidence further indicates that defendant McCoy did not assist in creating the computer report, but merely relied on data in it. Defendants' financial statements overstated the financial health of TFH solely because of the erroneous data provided to defendants by plaintiffs, and could not have been discovered until the independent audit.

Defendant McCoy did irregularly encounter plaintiffs at the local hotel where they all often ate breakfast. At these times, plaintiffs and defendant McCoy had general discussions about business at TFH, including discussions about whether TFH would be able to afford to

expand and reasons why cash flow shortage might be experienced. However, defendants never contracted to provide this information to plaintiffs individually or for plaintiffs' direct benefit. Rather, defendant McCoy understood that plaintiffs were meeting as the board of TFH, and the accounting advice was for the sole benefit of the corporation. Defendant McCoy alleges he did not know plaintiffs were going to personally guarantee loans made to TFH. In addition, defendants contend plaintiffs suffered no damage from defendant McCoy's representation as to the value of their shares, because his representation did not lower the value of the shares, but merely overstated their worth.

After hearing arguments and reviewing the record, the trial court granted defendants' motion for summary judgment, finding there was no genuine issue of material fact, and that defendants were entitled to judgment as a matter of law. Plaintiffs appeal.

*Caudle & Spears, P.A., by Thad A. Throneburg and Jeffrey L. Helms, for plaintiff-appellants.*

*Hedrick, Eatman, Gardner & Kincheloe, by Hatcher Kincheloe and L. Kristin King, for defendant-appellees.*

MARTIN, John C., Judge.

Plaintiffs' sole assignment of error is that the trial court erred in granting defendants' motion for summary judgment. Plaintiffs argue that there are genuine issues of material fact and that defendants were not entitled to judgment as a matter of law. We affirm the order of the trial court, except as to plaintiffs' claim of constructive fraudulent misrepresentation. As to that claim, we reverse summary judgment and remand to the trial court.

Our analysis in this case turns on the nature of plaintiffs' claimed injuries. Because of defendants' alleged breach of contract and negligent and fraudulent misrepresentations, plaintiffs have sought recovery for: (1) the loss of the value of their stock in TFH, and (2) their personal obligations to lenders on individually guaranteed debts of TFH. We address these two claims separately.

I.

[1]　Contending that defendants' alleged malfeasance directly and proximately resulted in the bankruptcy of TFH, and the loss of all present and future value in their shares of TFH stock, plaintiffs argue

that they are entitled to bring this action in a personal capacity, despite the fact that TFH may also have a cause of action against defendants. We do not agree.

In general, shareholders do not have individual causes of action against third persons for wrongs or injuries to the corporation that result in depreciation or destruction of the value of their stock. *Process Components, Inc. v. Baltimore Aircoil*, 89 N.C. App. 649, 366 S.E.2d 907 (1988). "The only exception is where the injury to individual stockholders results from a special duty [which is] owed to the stockholder by the wrongdoer and [has] an origin independent of plaintiff's status as stockholder." *Id.* at 655-56, 366 S.E.2d at 912, *citing Howell v. Fisher*, 49 N.C. App. 488, 272 S.E.2d 19 (1980), *disc. review denied*, 302 N.C. 218, 277 S.E.2d 69 (1981). *See Smith Setzer v. S.C. Procurement Review Panel*, 20 F.3d 1311 (4th Cir. 1994).

This Court recognized in *Howell*, *supra*, that shareholders may maintain individual claims when they are able to allege a loss peculiar to themselves by reason of some special circumstances or special relationship to the wrongdoers. In such a case, "the corporation is not a necessary party . . . since any damages recovered do not pass to the corporation or indirectly to its creditors." *Howell*, 49 N.C. App. at 492, 272 S.E.2d at 23.

In *Howell*, the plaintiff stockholders' suit was dismissed for failure to join the corporation as a necessary party. In that case we determined that the plaintiffs' claims for breach of contract were properly dismissed as there were no allegations that the plaintiffs were intended third party beneficiaries of the contract. Nevertheless, we reversed the trial court and held that the plaintiffs had a personal cause of action "for negligent misrepresentations made to them before they were stockholders for the purpose of inducing their investment." *Id.* at 498, 272 S.E.2d at 26.

Relying on *Howell*, plaintiffs contend they were intended third party beneficiaries of the contracts between TFH and defendants, and, therefore, the loss of the value of their shares is injury "peculiar and personal" to them. Plaintiffs likewise claim personal injury for this loss due to defendants' alleged negligent and fraudulent misrepresentations. However, plaintiffs' reliance on *Howell* is misplaced.

In order for shareholders to bring a personal action against a party contracting with their corporation, " '[t]he real test is . . . whether the contracting parties intended that a third person

should receive a benefit which might be enforced in the courts.' " *Howell*, 49 N.C. App. at 493, 272 S.E.2d at 23, *quoting Vogel v. Supply Co.*, 277 N.C. 119, 128, 177 S.E.2d 273, 279 (1970). The contract must have been entered into for plaintiffs' direct benefit. *Id.*

In ruling on a motion for summary judgment, the trial court must view the evidence in the light most favorable to the non-moving party, who is entitled to the benefit of all favorable inferences that may reasonably be drawn from the facts proffered. *Averitt v. Rozier*, 119 N.C. App. 216, 458 S.E.2d 26 (1995). Though plaintiffs have alleged that TFH's contracts with defendants were for plaintiffs' direct benefit, the evidentiary materials in the record before the court, viewed in the light most favorable to plaintiffs, do not support such allegations. Indeed, the evidence shows the alleged contracts were entered into at periodic shareholder/director meetings for the sole benefit of TFH. Such contracts would have benefitted plaintiffs only indirectly. Any loss in the value of plaintiffs' shares as a result of defendants' breach of these alleged contracts was not a loss peculiar to each individual plaintiff, but rather "caused loss to stockholders and creditors generally." *Jordan v. Hartness*, 230 N.C. 718, 719, 55 S.E.2d 484, 485 (1949). Therefore, these claims must be asserted by TFH or by plaintiffs in a derivative suit on behalf of TFH. The trial court properly granted summary judgment in favor of defendants as to plaintiffs' personal third party beneficiary claims.

As to the claims that defendants' alleged misrepresentations caused the loss in the value of plaintiffs' shares, a loss "peculiar or personal" to the stockholders is still required for an action without the corporation as a necessary party. It is clear in North Carolina that a plaintiff shareholder must suffer damage distinct and independent from that suffered by the corporation and shareholders generally. *McPhail v. Wilson*, 733 F.Supp. 1011 (W.D.N.C. 1990); *Howell*, 49 N.C. App. at 498, 272 S.E.2d at 26. As seen in *Howell*, this has been limited to actions wherein the plaintiffs were induced to purchase their initial shares in the corporation based on the misrepresentations of the defendant. In the present case, however, plaintiffs were already shareholders at the time of any alleged negligent or fraudulent misrepresentations. In addition, damages suffered due to any such misrepresentations were damages to the corporation generally, i.e., bankruptcy and the ensuing destruction of the value of their stock.

Thus, plaintiffs' claims for relief for the loss in the value of their shares as a result of defendants' breach of contract and misrepresen-

tations are actionable only on behalf of TFH, and may not be brought personally by plaintiffs. The trial court properly granted summary judgment for defendants on these issues.

## II.

[2] Plaintiffs also contend they personally guaranteed loans made to TFH based on defendants' representations as to TFH's financial viability. Plaintiffs maintain that a fiduciary relationship existed creating a special duty owed by defendants to plaintiffs individually. Plaintiffs argue they are entitled to recover personal damages for defendants' alleged breach of contract and negligent and fraudulent misrepresentations, as a result of which plaintiffs contend they were required to pay the personally guaranteed corporate debt.

Whether an injury to a corporation can also be a separate and distinct injury to a personal guarantor of corporate debt is apparently an issue of first impression in North Carolina. Nevertheless, a consensus on this question has emerged from the decisions of many courts.

[I]t is also generally accepted that guarantors of a corporation's debt, even if those guarantors are also stockholders, do not have standing to bring an action if the only harm suffered is derivative of the harm the corporation suffered. (Citations omitted.)

These general principles, however, are not without certain exceptions. One such exception exists where there is a special duty such as a contractual duty or fiduciary relationship between the wrongdoer and the shareholder. (Citations omitted.) Similarly, an individual shareholder or officer may bring an action directly against a third party where he has pled an injury separate and distinct from that incurred by the corporation.

*Chrysler Credit Corp. v. B.J.M., Jr., Inc.*, 834 F.Supp. 813, 838-39 (E.D. Pa. 1993). *Accord: Hengel, Inc. v. Hot 'N Now, Inc.*, 825 F.Supp. 1311 (N.D. Ill. 1993); *Taha v. Engstrand*, 987 F.2d 505 (8th Cir. 1993); *Hershman's, Inc. v. Sachs-Dolmar Div.*, 89 Ohio App. 3d 74, 623 N.E.2d 617 (1993); *Pepe v. GMAC*, 254 N.J. Super. 662, 604 A.2d 194, *cert. denied*, 130 N.J. 11, 611 A.2d 650 (1992); *Around the World Importing, Inc. v. Mercantile*, 795 S.W.2d 85 (Mo. App. 1990); *Walstad v. Norwest Bank of Great Falls*, 240 Mont. 322, 783 P.2d 1325 (1989); *Wells Fargo AG Credit Corp. v. Batterman*, 229 Neb. 15, 424 N.W.2d 870 (1988); *United States v. Palmer*, 578 F.2d 144 (5th Cir. 1978); *Sacks v. American Fletcher Nat. Bank & Trust Co.*, 258 Ind.

189, 279 N.E.2d 807 (1972); *Buschmann v. Professional Men's Association*, 405 F.2d 659 (7th Cir. 1969).

This general rule corresponds with North Carolina's present law governing shareholders' individual actions arising from corporate injuries. *See Outen v. Mical*, 118 N.C. App. 263, 454 S.E.2d 883 (1995). We have no difficulty in extending this rule to personal guarantors of corporate debt. Absent some special duty between the wrongdoer and the guarantor, or some injury separate and distinct from that of the corporation, the injury suffered by a guarantor is derivative of the corporation and does not give rise to an individual cause of action personal to the guarantor.

Plaintiffs here claim both an injury separate and distinct from that of TFH and a special duty between themselves and defendants. However, as we have noted above, one who pays a personally guaranteed corporate debt has not suffered an injury separate and distinct from that of the corporation because he is "made whole if the corporation recovers; and so the rule has the salutary effect of preventing the double counting of damages." *Taha*, 987 F.2d at 507. *See also Hershman's, Inc., supra; Pepe, supra; Bohm v. Commerce Union Bank of Tennessee*, 794 F.Supp 158 (W.D. Pa. 1992); *Walstad, supra; Wells Fargo, supra*. Therefore, to assert this cause of action plaintiffs must show that defendants owed them a special duty.

As we noted above, there is no contractual duty between plaintiffs and defendants. The evidence shows the alleged contracts were entered into for the sole benefit of TFH, not for plaintiffs. Plaintiffs thus have no breach of contract claim arising from the personal guarantees. The trial court properly granted summary judgment as to this issue.

[3] As to plaintiffs' negligent misrepresentation claim, the North Carolina Supreme Court has adopted the *Restatement (Second) of Torts* § 552 (1977) standard for accountants' liability for negligent misrepresentation. *See Raritan River Steel Co. v. Cherry, Bekaert & Holland*, 322 N.C. 200, 367 S.E.2d 609 (1988). This standard "recognizes that liability should extend not only to those with whom the accountant is in privity or near privity, but also to those persons, or classes of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely." *Id.* at 214, 367 S.E.2d at 617.

For a constructive fraud claim, plaintiffs must "allege the facts and circumstances (1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff." *Rhodes v. Jones*, 232 N.C. 547, 549, 61 S.E.2d 725, 726 (1950). *See also Terry v. Terry*, 302 N.C. 77, 273 S.E.2d 674 (1981). The fact that a defendant did not benefit from a fiduciary breach is not a barrier to a constructive fraud claim. *See Bumgarner v. Tomblin*, 63 N.C. App. 636, 306 S.E.2d 178 (1983).

Unlike plaintiffs' claims to recover damages for the loss in the value of their shares, the record as to plaintiffs' negligent misrepresentation and constructive fraud claims arising from the personal guarantees does reflect a genuine issue of material fact when considered in the light most favorable to plaintiffs. It is possible to infer that defendant McCoy was aware plaintiffs would rely on his opinion in personally guaranteeing loans for TFH, and that the parties may have had a relationship of trust which defendants breached to the detriment of plaintiffs.

A question remains, however, as to whether plaintiffs filed these two remaining claims within the applicable statute of limitations. The last personal guarantees were entered into no later than the end of 1988. Plaintiffs filed this action in July 1992, more than three years from the time of the last alleged act by defendants giving rise to this action.

In their negligent misrepresentation claim, plaintiffs have essentially alleged accounting malpractice by defendants. G.S. § 1-15(c) establishes a three-year statute of limitations for professional malpractice claims, including negligence, *Sharp v. Teague*, 113 N.C. App. 589, 439 S.E.2d 792 (1994), and is applicable to accountants in the rendering of their professional services. *Snipes v. Jackson*, 69 N.C. App. 64, 316 S.E.2d 657, *disc. review denied*, 312 N.C. 85, 321 S.E.2d 899 (1984). As plaintiffs' suit was filed more than three years after the accrual of their action for negligent misrepresentation, this claim is barred by G.S. § 1-15(c). The trial court properly granted summary judgment as to this issue.

Fraud, however, "is not within the scope of 'professional services' as that term is used in N.C. Gen. Stat. § 1-15(c), and thus cannot be 'malpractice' within the meaning of that statute." *Sharp*, 113 N.C. App. at 592, 439 S.E.2d at 794. Though the fraud in *Sharp* referred to

alleged fraud by an attorney, the same rule applies to accountants. *See AICPA Professional Standards BL* § 921. Similarly, the claim is not barred by the three-year statue of limitations in G.S. § 1-52(9), "as the ten-year statute of limitations contained in G.S. 1-56 applies to *constructive* fraud claims based upon a breach of fiduciary duty." *Adams v. Moore*, 96 N.C. App. 359, 362, 385 S.E.2d 799, 801 (1989), *disc. review denied*, 326 N.C. 46, 389 S.E.2d 83 (1990).

The record, when taken in the light most favorable to plaintiffs, suggests their claim for constructive fraudulent misrepresentation is a constructive fraud claim based upon a breach of fiduciary duty. "Whether such a [fiduciary] relationship exists in any instance is determined by the specific circumstances of the case. When, as here, the circumstances governing the alleged relationship are in dispute, the issue is one of fact for the jury, rather than one of law for the court." *Speck v. N.C. Dairy Foundation*, 64 N.C. App. 419, 423, 307 S.E.2d 785, 789 (1983), *reversed on other grounds*, 311 N.C. 679, 319 S.E.2d 139 (1984). Thus, plaintiffs were entitled to reach the jury on this issue, and the trial court erred in granting summary judgment as to this one claim.

Affirmed in part, reversed in part, and remanded.

Judges JOHNSON and GREENE concur.