Bucci v. Burns, 2017 NCBC 81.

STATE OF NORTH CAROLINA

WAKE COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 15478

MARCY BUCCI; KEVIN SALVA,
RICK BUCCI; EUGENE N. BUCCI;
EUGENE M. BUCCI; TOM
FERGUSON; KAREN BOYLE
FERGUSON; DAVID LUBIN;
CHRISTINE MERRITT; ANGELO
KHOURY; and KARL SCHULER,

        Plaintiffs,

v.

ROBERT BURNS; ZEESHAN-UL-
HASSAN USMANI; and GARRETT
PERDUE,

        Defendants.

**ORDER AND OPINION ON
MOTIONS TO DISMISS**

1.    Plaintiffs are former investors in Predictifyme.com, Inc. ("Predictifyme"). When Predictifyme filed for bankruptcy in 2016, Plaintiffs lost their investments. They filed this suit against the company's co-founders, asserting claims for fraud and securities violations, among others.

2.    Defendants Robert Burns and Garrett Perdue each moved to dismiss Plaintiffs' complaint under Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure. The Court **GRANTS** the motions.

> *Meynardie & Nanney, PLLC by Joseph H. Nanney, Robert A. Meynardie, and Robert W. Weston, for Plaintiffs.*
>
> *Miller Law Firm, PLLC by Brian P. LiVecchi and W. Stacy Miller, II, for Defendant Garrett Perdue.*
>
> *North Raleigh Law Group by Robert L. Morton, for Defendant Robert Burns.*

Conrad, Judge.

# I.
# BACKGROUND

3. The Court does not make findings of fact on a Rule 12(b)(6) motion to dismiss. The following factual summary is drawn from relevant allegations in the complaint.

4. Predictifyme was a technology company incorporated by Defendants in Delaware in 2014. (Compl. ¶¶ 21, 24, ECF No. 1.) Its products were developed using the "proprietary . . . algorithmic programs" of Defendant Zeeshan-Ul-Hassan Usmani, which Usmani had developed through his company, Go-Fig Solutions (Pvt) Ltd. ("Go-Fig"). (Compl. ¶¶ 24, 31–32.)

5. Plaintiffs are eleven individuals, all of whom "purchased either stock or a convertible note in Predictifyme." (Compl. ¶ 23.) The complaint does not state when Plaintiffs made their investments, nor does it identify which Plaintiffs purchased stock and which purchased a convertible note.

6. Plaintiffs' central allegation is that they made their investments in reliance on "false representations that Predictifyme had purchased Go-Fig and had the right to control the Go-Fig software." (Compl. ¶ 42; *see also* Compl. ¶¶ 36, 61.) Specifically, in a 2014 press release posted on the company's website, Predictifyme "announce[d] that it has acquired Go-Fig," including its "technology and team." (Compl. ¶ 25.) A March 2015 news article reiterated that "Predictifyme acquired Go-Fig in November, 2014." (Compl. ¶ 34; *see also* Compl. ¶¶ 31–32.) And "Defendants repeatedly represented to the Plaintiffs (as well as other third parties) that Predictifyme had

purchased Go-Fig" and therefore "owned the technology that would be the basis for the further development" of its products. (Compl. ¶ 33.)

7. Plaintiffs allege these representations were false. Predictifyme never actually owned Go-Fig or its technology. (Compl. ¶¶ 38–39, 47, 49.) Instead, "Defendant Burns and Defendant Usmani had an informal agreement that permitted Predictifyme to use the Go-Fig software." (Compl. ¶ 46.)

8. According to the complaint, Defendants also represented that Predictifyme had a formal relationship with the United Nations "to provide predictive software." (Compl. ¶ 40.) This, too, was false. Some Plaintiffs (the complaint is silent as to which) allegedly purchased convertible notes in the belief that Predictifyme had a relationship with the United Nations. (Compl. ¶ 41.)

9. In late 2015, Predictifyme ran into financial difficulties. (Compl. ¶ 43.) In February 2016, Predictifyme's CEO "announced at the annual shareholders meeting that Predictifyme did not own, and had never owned, Go-Fig or its assets." (Compl. ¶ 47.) Less than four months later, Predictifyme filed for bankruptcy, and Plaintiffs lost their investments. (Compl. ¶¶ 50, 70.)

10. Plaintiffs filed this action on December 22, 2016. The complaint asserts five causes of action, all deriving from the same set of factual allegations: (i) fraud; (ii) negligent misrepresentation; (iii) breach of fiduciary duty; (iv) constructive fraud; and (v) violations of the North Carolina Securities Act.

11. Perdue moved to dismiss all claims on April 10, 2017, and Burns separately filed his motion to dismiss on May 4, 2017. (Plaintiffs apparently served Defendant

Usmani by publication at his last-known address, but he has not appeared or participated in this case. (*See* ECF No. 19.)) The motions have been fully briefed, and the Court held a hearing on July 11, 2017. The motions are now ripe for determination.

## II.
## DEFENDANTS' RULE 12(b)(1) MOTIONS

12. Defendants contend that Plaintiffs lack standing "[t]o the extent Plaintiffs' Claims are based on the diminution of stock value, and not on the inducement to purchase securities." (Mem. of Law in Supp. of Mot. to Dismiss 1, ECF No. 12.1 ["Perdue Br."]; *see also* Perdue Mot. to Dismiss ¶ 1, ECF No. 12.3; Burns Mot. to Dismiss 1, ECF No. 16.) In other words, Defendants contend that Plaintiffs, as shareholders, may not assert claims based on wrongs to Predictifyme, the corporation.

13. When the issue of standing is raised at the pleading stage, a court must "view the allegations as true and the supporting record in the light most favorable to the nonmoving party." *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008). "[T]he court should grant a 'Rule 12(b)(1) motion only if the material jurisdictional facts are not in dispute and the moving party is entitled to a judgment as a matter of law.'" *Wilkie v. Stanley*, 2011 NCBC LEXIS 11, at *10 (N.C. Super. Ct. Apr. 20, 2011) (quoting *Southstar Funding, L.L.C. v. Warren, Perry & Anthony, P.L.L.C.*, 445 F. Supp. 2d 583, 584 (E.D.N.C. 2006)).

14. Upon a careful reading, the Court concludes that Plaintiffs do not seek to recover for injuries to Predictifyme. Shareholders may "seek damages in their own

right" when asserting claims for fraud or negligent misrepresentations "made to them before they were stockholders for the purpose of inducing their investment." *Howell v. Fisher*, 49 N.C. App. 488, 498, 272 S.E.2d 19, 26 (1980). That is precisely what Plaintiffs allege here. The thrust of the complaint (as Perdue acknowledges) is that Defendants wrongfully induced Plaintiffs to become investors in Predictifyme. (*See* Perdue Br. 23) Accordingly, the allegations in the complaint do not implicate "the 'well-established general rule'" that "shareholders cannot pursue individual causes of action against third parties for wrongs or injuries to the corporation.'" *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 335, 525 S.E.2d 441, 444 (2000) (quoting *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 660, 488 S.E.2d 215, 219 (1997)); *see also Howell*, 49 N.C. App. at 498, 272 S.E.2d at 26 ("plaintiffs' claim cannot be a derivative one, on behalf of the corporation, when the alleged negligence occurred before they were even stockholders." (citation omitted)).

III.
DEFENDANTS' RULE 12(b)(6) MOTIONS

15. A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the complaint." *Concrete Serv. Corp. v. Investors Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). "Dismissal of a complaint under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).

16.   In deciding a Rule 12(b)(6) motion, the Court must treat the well-pleaded allegations of the complaint as true and view the facts and permissible inferences "in the light most favorable to" the non-moving party. *Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986); *see also Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970). "[T]he court is not required to accept as true any conclusions of law or unwarranted deductions of fact." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001).

17.   In general, "matters outside the complaint are not germane to a Rule 12(b)(6) motion." *Weaver v. Saint Joseph of the Pines, Inc.*, 187 N.C. App. 198, 203, 652 S.E.2d 701, 707 (2007) (internal citation omitted). Defendants Perdue and Burns have attached a number of exhibits to their motions. The Court renders its decision solely on the basis of the allegations in the complaint and therefore need not decide whether these exhibits are properly presented.

A.   Fraud and Negligent Misrepresentation

18.   Plaintiffs assert their claims for fraud and negligent misrepresentation in the alternative. (*See* Compl. ¶ 78.) Both claims turn on the allegation that Defendants misrepresented Predictifyme's acquisition of Go-Fig and its relationship with the United Nations. (*See* Compl. ¶¶ 55–56, 78.)

19.   To state a claim for fraud, Plaintiffs must allege five elements: (1) that Defendants "made a false representation or concealment of a material fact"; (2) "that the representation or concealment was reasonably calculated to deceive" Plaintiffs; (3) that Defendants "intended to deceive" Plaintiffs; (4) that Plaintiffs were deceived;

and (5) that Plaintiffs "suffered damage resulting from [the] misrepresentation or concealment." *Holcomb v. Landquest LLC*, 2017 NCBC LEXIS 36, at *14 (N.C. Super. Ct. Apr. 21, 2017) (quoting *Claggett v. Wake Forest Univ.*, 126 N.C. App. 602, 610, 486 S.E.2d 443, 447 (1997)). Similarly, "[t]he tort of negligent misrepresentation occurs when a party justifiably relies to his detriment on information prepared without reasonable care by one who owed the relying party a duty of care." *Hunter v. Guardian Life Ins. Co. of Am.*, 162 N.C. App. 477, 484, 593 S.E.2d 595, 600 (2004) (citation omitted).

20.     "Allegations of fraud and negligent misrepresentation must be stated with particularity." *Deluca v. River Bluff Holdings II, LLC*, 2015 NCBC LEXIS 12, at *20 (N.C. Super. Ct. Jan. 28, 2015); *see also* N.C. R. Civ. P. 9(b); *Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) (holding that particularity requirement of Fed. R. Civ. P. 9(b) applies where, as here, "fraud and negligent misrepresentation claims are based on the same set of alleged facts"). Plaintiffs must allege the "time, place and content" of the misrepresentation, the "identity of the person making the representation," and "what was obtained as a result." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981).

21.     "The degree of particularity required to comply with Rule 9(b) varies from case to case." *McDonnell Douglas Corp. v. SCI Tech.*, 933 F. Supp. 822, 825 (E.D. Mo. 1996) (applying Fed. R. Civ. P. 9(b)). Relevant factors include "the nature of the case, the complexity or simplicity of the transaction or occurrence, the relationship of the parties and the determination of how much circumstantial detail is necessary to give

notice to the adverse party and enable him to prepare a responsive pleading." *United States v. Wells Fargo Bank, N.A.*, 972 F. Supp. 2d 593, 616 (S.D.N.Y. 2013) (citation omitted) (same); *see also Gabbert v. Penncorp Fin., Inc.*, No. 93-2372-GTV, 1994 U.S. Dist. LEXIS 5781, at *6 (D. Kan. Apr. 26, 1994) (noting that, "where multiple plaintiffs and defendants are involved, more particularity must be required").

22.  Applying these standards, the complaint fails to satisfy Rule 9(b).  The allegations in this case are moderately complex:  that eleven Plaintiffs were induced to make investments by three Defendants based on multiple misrepresentations made over a period of several months.  (*See, e.g.*, Compl. ¶¶ 25, 34, 40.)  The complaint provides some minimal description of the misrepresentations—the illusory acquisition of Go-Fig and the non-existent relationship with the United Nations—but fails to "identify the particular individuals who dealt with" Plaintiffs.  *Coley v. N.C. Nat'l Bank*, 41 N.C. App. 121, 125, 254 S.E.2d 217, 219 (1979).

23.  For example, the complaint attributes most of the alleged acts to "Defendants" as a group, not to any individual Defendant.  As alleged, "Defendants" (1) caused Predictifyme to announce in 2014 "that it has acquired Go-Fig"; (2) represented that Predictifyme acquired Go-Fig in "a news article published in March 2015"; and (3) "made repeated representations that PredictifyMe had entered into a formal relationship with the United Nations to provide predictive software." (Compl. ¶¶ 25, 34, 40.)  There is no allegation that Defendants took any of these actions in concert, the complaint does not attribute any action to Perdue personally, and Burns is alleged only to have disseminated the 2014 press release through social

media.  (*See* Perdue Br. 8; Compl. ¶ 27.)  Indeed, Plaintiffs concede that they cannot "say with complete certainty at the pleading stage which of the three individual defendants took" some of the alleged acts.  (Resp. Br. in Opp'n to Def. Garrett Perdue's Mot. to Dismiss 7 n.1, ECF No. 21 ["Resp. to Perdue"].)

24.    There is even less detail about Plaintiffs.  For Plaintiffs "to have been induced" by fraud, they "must have been the victim of the materially false statements" allegedly made by Defendants.  *North Cent. F. S., Inc. v. Brown*, 951 F. Supp. 1383, 1408 n.18 (N.D. Iowa 1996).  Yet the complaint does not identify which Plaintiffs relied on any given misrepresentation.  Nor does it identify which Plaintiffs purchased stock and which purchased a convertible note, much less when any of the investments were made.  It is not even clear from the face of the complaint whether any individual Plaintiff ever interacted with any individual Defendant.  The complaint "simply does not allege which person was the recipient of which allegedly false statements in what relationship to which" of the alleged investment transactions.  *Id.*

25.    In less complex cases, it may be reasonable to refer to "Plaintiffs" or "Defendants" as a group.  In this case, the "uncertainty, not only as to who made the alleged misrepresentations, but to whom they were made when multiple plaintiffs were involved," renders the allegations insufficient under Rule 9(b).  *Id.* at 1408; *see also Phillips & Jordan, Inc. v. Bostic*, 2009 NCBC LEXIS 3, at *14–15 (N.C. Super. Ct. June 2, 2009); *Lawrence v. UMLIC-Five Corp.*, 2007 NCBC LEXIS 20, at *8–9 (N.C. Super. Ct. June 18, 2007).

26.    The Court therefore grants Burns and Perdue's motions as to the claims for fraud and negligent misrepresentation.  Plaintiffs have not previously amended their complaint and request the opportunity to cure any defect.  (Resp. to Perdue 10 n.3; Resp. Br. in Opp'n to Def. Robert Burns' Mot. to Dismiss 12 n.3, ECF No. 22 ["Resp. to Burns"].)  The Court agrees and, in its discretion, dismisses the claims without prejudice and grants Plaintiffs leave to amend within thirty days of this opinion.

## B.  North Carolina Securities Act

27.    Apart from citing N.C. Gen. Stat. § 78A-56, Plaintiffs' complaint provides almost no elaboration regarding their claim for violations of the North Carolina Securities Act.  (*See* Compl. ¶¶ 86–88.)  Plaintiffs' briefing confirms that the claim is based on the same allegations of fraud discussed above, along with the additional allegation that Plaintiffs' purchases of stock or a convertible note also "constitute purchases of securities."  (Resp. to Perdue 19–20; *see also* Resp. to Burns 18–20.)

28.    Under North Carolina law, these claims must be pleaded with particularity. *See NNN Durham Office Portfolio 1, LLC v. Highwoods Realty Ltd. P'ship*, 2013 NCBC LEXIS 11, at *35–36 (N.C Super. Ct. Feb. 19, 2013).  Having concluded that Plaintiffs' claims for fraud and negligent misrepresentation lack the required particularity under Rule 9(b), the Court further concludes Plaintiffs' securities claims are insufficient on the same basis.

29.    It also bears mention that section 56(a) applies only to a "person who offers or sells a security."  N.C. Gen. Stat. § 78A-56(a).  North Carolina courts "place great emphasis on the solicitation of the buyer as the most critical stage of the selling

transaction in determining who is an offeror or seller of securities." *Atkinson v. Lackey*, 2015 NCBC LEXIS 21, at \*23 (N.C. Super. Ct. Feb. 27, 2015) (citation, alteration, and quotation marks omitted). The complaint lacks even a conclusory or boilerplate allegation that Defendants solicited investments from Plaintiffs. (*See* Compl. ¶¶ 85–88.) At most, paragraph 22 alleges that, after forming Predictifyme, Defendants "sought investors" at some unspecified time. (Compl. ¶ 22.) This barebones statement is insufficient for purposes of Rule 12(b)(6) to allege that any Defendant offered or sold a security to any Plaintiff.

30. Accordingly, the Court grants the motions as to the securities claim. The claim is dismissed without prejudice, and the Court grants Plaintiffs leave to amend the complaint within 30 days of this opinion.

## C. Constructive Fraud and Breach of Fiduciary Duty

31. Plaintiffs' claims for constructive fraud and breach of fiduciary duty are premised on the same facts as its other claims—that Defendants, through misrepresentations, wrongfully induced them to invest in Predictifyme. Defendants contend that the claims should be dismissed because Plaintiffs have not adequately alleged a fiduciary relationship, which is an essential element of both claims. *See Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (fiduciary duty); *Crumley & Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 620, 730 S.E.2d 763, 767 (2012) (constructive fraud).

32. The Court agrees with Defendants. The complaint alleges that Defendants' fiduciary duties arose out of their status "as the majority owners" of Predictifyme.

(Compl. ¶ 66.) Under certain circumstances, majority shareholders may owe fiduciary duties to minority shareholders. *See Gaines v. Long Mfg. Co.*, 234 N.C. 340, 344–45, 67 S.E.2d 350, 353–54 (1951). But Defendants' alleged "breach"— "representing that Predictifyme had acquired Go-Fig, knowing that it had not," (Compl. ¶ 69)—took place *before* Plaintiffs became shareholders. A fiduciary relationship must exist before it can be breached. *See King v. Bryant*, 795 S.E.2d 340, 348 (N.C. 2017) ("For a breach of fiduciary duty to exist, there must first be a fiduciary relationship between the parties." (citation omitted)).

33. To the extent Plaintiffs contend a de facto fiduciary relationship arose at some earlier point, they have not adequately alleged at this stage that such a relationship existed between Plaintiffs, on the one hand, and Defendants, on the other. *See, e.g.*, *Dalton*, 353 N.C. at 652, 548 S.E.2d at 708 (noting that "domination and influence" of one party over the other is "an essential component of any fiduciary relationship"); *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 348 (4th Cir. 1998) ("Only when one party figuratively holds all the cards – all the financial power or technical information, for example – have North Carolina courts found that the 'special circumstance' of a fiduciary relationship has arisen."). The complaint is silent on the relationship between the parties. There are no allegations that Defendants even knew Plaintiffs, much less that they interacted in such a way that Plaintiffs reposed a special confidence in Defendants.

34. Accordingly, the Court grants the motions to dismiss the claims for breach of fiduciary duty and constructive fraud. The claims are dismissed without prejudice,

but the Court grants Plaintiffs the opportunity to amend the complaint within 30 days of this opinion.

## IV.
## CONCLUSION

35. For the reasons stated above, the Court **DENIES** the motions to dismiss for lack of standing. The Court **GRANTS** the motions to dismiss for failure to state a claim, and Plaintiffs' claims against Perdue and Burns are **DISMISSED without prejudice**. Plaintiffs are granted leave to file an amended complaint on or before October 16, 2017.

This the 14th day of September, 2017.

/s/ Adam M. Conrad
Adam M. Conrad
Special Superior Court Judge
 for Complex Business Cases