Azure Dolphin, LLC v. Barton, 2017 NCBC 88.

STATE OF NORTH CAROLINA

FORSYTH COUNTY

AZURE DOLPHIN, LLC, et al.,

        Plaintiffs,

v.

JUSTIN BARTON, et al.,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 7622

**OPINION AND ORDER ON
DEFENDANTS' MOTION
TO DISMISS**

1. This dispute relates to a business partnership between Plaintiff Jean-Pierre Boespflug and Defendant Justin Barton to acquire and invest in real estate through numerous entities around the country. Boespflug now claims that Barton carried out a wrongful scheme to remove him as an owner of the investment entities and to transfer their properties to others. In this action, Boespflug asserts more than a dozen claims against Barton, his wife Janet Barton, and nearly twenty limited liability companies and partnerships, most of which are organized under the laws of other States.

2. Defendants have moved to dismiss the complaint for lack of personal jurisdiction, lack of subject-matter jurisdiction, and failure to state a claim. Having considered the motion, the briefs, and the arguments of counsel, the Court **GRANTS** Defendants' motion.

    *Angstman Johnson by Thomas J. Angstman and Ashville Legal by Jake A. Snider and Michael G. Wimer, for Plaintiffs.*

    *Bell, Davis & Pitt, P.A. by Alan M. Ruley and Andrew A. Freeman, for Defendants.*

Conrad, Judge.

## I.
## PROCEDURAL HISTORY

3.    Plaintiffs Jean-Pierre Boespflug, Azure Dolphin, LLC, and JPB Holdings, Inc. filed their complaint in December 2016.  (V. Compl., ECF No. 1.)  The initial complaint included fifteen claims for relief against twenty-one defendants.

4.    Defendant Sanur Brokerage Company timely filed its answer, and all other Defendants moved to dismiss Plaintiffs' complaint.  (Mot. to Dismiss, ECF No. 13; Answer of Sanur Brokerage Co., ECF No. 29.)  Defendants sought dismissal for lack of personal jurisdiction, lack of subject-matter jurisdiction, failure to join necessary parties, and failure to state a claim.

5.    The motion prompted Plaintiffs to seek leave to amend their complaint. (Pls.' Mot. to Am., ECF No. 35.)  Among other things, Plaintiffs proposed to name as defendants several "necessary parties previously unknown to the Plaintiffs."  (Pls.' Mot. to Am. ¶ 7.)  Three weeks later, Plaintiffs voluntarily dismissed Viking Properties, LLC as a defendant.  (Notice of Dismissal, ECF No. 43.)

6.    On April 6, 2017, the Court granted Plaintiffs' motion to amend (over Defendants' opposition) and denied Defendants' motion to dismiss as moot.  (Order Granting Pls.' Mot. to Am., ECF No. 45.)  This Order also permitted Defendants, as part of any renewed motion to dismiss, to "incorporate, in whole or in part, the briefs filed in support of their original Motion to Dismiss."  (Order Granting Pls.' Mot. to Am. ¶ 4.)

7.    After filing their amended complaint, Plaintiffs sought leave to file a second amended complaint, which the Court denied on the grounds of undue delay, dilatory

motive, and failure to comply with this Court's Rules. (Pls.' Mot. for Leave to File Second Am. Compl., ECF No. 56; Order Den. Pls.' Mot. For Leave to File Second Am. Compl., ECF No. 68.)

8. On May 19, 2017, Defendants moved to dismiss the amended complaint. (Mot. to Dismiss Am. Compl., ECF No. 61.) During briefing, Plaintiffs voluntarily dismissed their claims against all of the "necessary parties" added as part of the amended complaint as well as Sanur Brokerage and, for the second time, Viking Properties. (Notice of Voluntary Dismissal, ECF No. 73.) Plaintiffs also dismissed their claims for unjust enrichment (claim 7) and conversion (claim 9) as to the remaining Defendants and narrowed their claims for breach of fiduciary duty (claim 6), constructive trust (claim 8), and punitive damages (claim 10). (Notice of Voluntary Dismissal.)

9. The Court heard oral argument on Defendants' renewed motion to dismiss on July 20, 2017. The motion is ripe for determination.

II.
BACKGROUND

10. Barton and Boespflug began investing in real estate together in the 1980s. (Am. Compl. ¶¶ 51–52, ECF No. 54.) They "formed various entities to acquire and hold investment properties throughout the United States," mostly purchasing commercial buildings and apartment complexes. (Am. Compl. ¶¶ 55, 59.) Twelve of these entities—the "Investment Entities"—are Defendants in this litigation:

    a. Jay's Commonwealth Park, LLC and Jay's Commonwealth Park Phase II, LLC are North Carolina limited liability companies;

b.    Barton Boespflug II and Vintage Oak II are California limited partnerships;

c.    Willamette River I GP is an Oregon general partnership; and

d.    Ash Creek, LLC; Hess Creek, LLC; Jay's Canby, LLC; Newby House, LLC; Richmond Park, LLC; River Valley Investors, LLC; and Royal Ascot, LLC are Oregon limited liability companies.

(Am. Compl. ¶¶ 4–15.)  According to the complaint, Boespflug contributed most of the capital, and Barton served as the Investment Entities' manager.  (*See* Am. Compl. ¶¶ 56–57, 60.)

11.    At some point (the complaint does not specify when), Boespflug created Azure Dolphin as "a Nevada limited liability company to hold assets in trust for his family." (Am Compl. ¶ 65.)  Boespflug transferred a portion of his economic interest in the entities to Azure Dolphin.  (Am Compl. ¶ 66.)  In his role as manager of the Investment Entities, Barton reported "intermittently on the state of the portfolio" and made distributions to Boespflug and Azure Dolphin.  (Am. Compl. ¶¶ 63, 67.)

12.    In April 2011, Boespflug returned to his residence in France.  (Am. Compl. ¶ 70.)  A few days later, Barton asked Boespflug to help secure a new loan and refinance two others.  (Am. Compl. ¶ 71.)  The complaint does not identify which entity or entities the loans concerned, but Boespflug responded that "his financial position was no longer conducive to personally guaranteeing loans on" the investment properties.  (Am. Compl. ¶ 72.)  At the end of 2011, 18 properties remained in the investment portfolio.  (Am. Compl. ¶ 59.)

13. Shortly after, the complaint alleges, Barton secretly took actions to remove Boespflug from the Investment Entities. Barton deemed Boespflug's transfers to Azure Dolphin as having extinguished his voting rights as a member of the Investment Entities. (*See* Am. Compl. ¶ 88.) Exercising his own unchecked voting rights, Barton converted Boespflug's membership interests into notes payable and issued a series of promissory notes in 2012 and 2013 for their purchase. (*See* Am. Compl. ¶¶ 78–80, 84–85, 98, 101.) The interests were allegedly obtained by Defendants Barton Boespflug II, Viking Property Investors LLC, Ash Creek, Vintage Oak II, or Willamette River I, LLC. (Am. Compl. ¶ 79.) Barton then "unilaterally amended the operating agreements of the Investment Entities with terms considerably more favorable to him." (Am. Compl. ¶ 89.)

14. Barton also "sold properties owned by" the Investment Entities and "transferred" others to entities controlled by himself. (Am. Compl. ¶ 90.) The complaint identifies three transferred properties: an Oregon property owned by Jay's Canby; a second Oregon property owned by Newby House; and a Texas property owned by Richmond Park. (*See* Am. Compl. ¶¶ 116, 118, 119.)

15. Boespflug alleges that he first learned of these actions in the summer of 2016. (Am. Compl. ¶¶ 78, 81.) He filed this suit a few months later.

III.
ANALYSIS

16. Plaintiffs continue to assert thirteen of the fifteen claims contained in the amended complaint. The claims include several declaratory-judgment counts; claims for breach of fiduciary duty, civil conspiracy, fraudulent conveyance, and unfair or

deceptive trade practices; and requests for various remedies labeled as claims for relief.

17. Defendants move to dismiss the complaint in its entirety. Many of the Defendants are entities organized under the laws of other States. Some contend that the Court lacks personal jurisdiction over them, and others argue that the Court lacks subject-matter jurisdiction as to certain claims (such as judicial dissolution). Defendants further contend that the complaint fails to state a claim for relief under Rule 12(b)(6).

A. Personal Jurisdiction

18. Ten Defendants—Ash Creek; Jay's Canby; Jay's Canby Florence, LLC; Montpelier Investors, LLC; Newby House; Richmond Park; River Valley Investors; Willamette River I GP; Willamette River I, LLC; and Victoria Place GP—argue that this Court lacks personal jurisdiction over them. All are entities organized under the laws of other States with their principal places of business outside North Carolina.

19. "A North Carolina court has jurisdiction over a nonresident defendant if (1) statutory authority for the exercise of jurisdiction under the long-arm statute, N.C. Gen. Stat. § 1-75.4, exists and (2) the exercise of jurisdiction comports with due process under federal law." *Soma Tech., Inc. v. Dalamagas*, 2017 NCBC LEXIS 26, at *8 (N.C. Super. Ct. Mar. 24, 2017). Here, the Court need not consider the long-arm statute because the federal due-process analysis is dispositive.

20. Due process requires that a defendant "have certain minimum contacts" with this State "such that the maintenance of the suit does not offend 'traditional

notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). Courts "have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). General jurisdiction allows a court "to hear any and all claims" asserted against a defendant where the defendant's contacts "with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* Specific jurisdiction, on the other hand, "exists when the cause of action arises from or is related to defendant's contacts with the forum." *Skinner v. Preferred Credit*, 361 N.C. 114, 122, 638 S.E.2d 203, 210 (2006).

21. When a defendant challenges personal jurisdiction, the plaintiff has the burden of establishing a *prima facie* basis for jurisdiction. *See Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615, 532 S.E.2d 215, 217 (2000). A court will rely on the allegations in the complaint to make this determination unless the defendant submits sworn affidavits that contradict those allegations. *See Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998). If the defendant submits affidavits, the plaintiff may continue to rely on the allegations in the complaint, submit its own affidavits, or request jurisdictional discovery. *See Bruggeman*, 138 N.C. App. at 615, 532 S.E.2d at 217 (noting that the trial court may resolve personal jurisdiction on the affidavits submitted to the court or at an evidentiary hearing).

22. The record in this case is one-sided. Each of the ten Defendants filed an affidavit stating it is not domiciled in and does not have its principal place of business

in this State.[1]  Six entities are Oregon limited liability companies with their principal places of business in California.  Two others are Oregon general partnerships with members from Oregon, California, France, and/or Monaco.  And the remaining two entities are Michigan and South Carolina limited liability companies with their principal places of business in California.

24.   Plaintiffs' response is hard to follow.  In a three-paragraph argument, Plaintiffs ignore general jurisdiction (with good reason) and do little more than wink at the law for specific jurisdiction.  (*See* Pls.' Resp. Br. to Defs.' Mot. to Dismiss 21–22, ECF No. 75.)   They do not discuss, much less dispute, any of Defendants' affidavits.  Rather, they assert that each Defendant is part of "the Viking Properties venture," which "operates primarily in North Carolina."  (Pls.' Resp. Br. 22.)

---

[1] *See* Willamette River I, LLC's Aff. ¶¶ 3–4, ECF No. 28; Ash Creek, LLC's Aff. ¶¶ 2–5, ECF No. 15; Jay's Canby, LLC's Aff. ¶¶ 3–4, ECF No. 17; Newby House, LLC's Aff. ¶¶ 3–4, ECF No. 22; Richmond Park, LLC's Aff. ¶¶ 3–4, ECF No. 23; River Valley Investors, LLC's Aff. ¶¶ 3–4, ECF No. 24; Victoria Place GP's Aff. ¶¶ 3, 6, ECF No. 26; Willamette River I GP's Aff. ¶¶ 3, 6, ECF No. 27; Montpelier Investors, LLC's Aff. ¶¶ 3–4, ECF No. 21; Jay's Canby Florence, LLC's Aff. ¶¶ 3–4, ECF No. 18.

[2] *See* Willamette River I, LLC's Aff. ¶¶ 10–21; Ash Creek, LLC's Aff. ¶¶ 10–21; Jay's Canby, LLC's Aff. ¶¶ 10–21; Newby House, LLC's Aff. ¶¶ 10–21; Richmond Park, LLC's Aff. ¶¶ 10–21; River Valley Investors, LLC's Aff. ¶¶ 9–20; Victoria Place GP's Aff. ¶¶ 9–20; Willamette River I GP's Aff. ¶¶ 9–20; Montpelier Investors, LLC's Aff. ¶¶ 9–20; Jay's Canby Florence, LLC's Aff. ¶¶ 10–21.

25.    As best the Court can tell, Plaintiffs contend that Defendants are subject to jurisdiction because Viking Properties (which is no longer a party to this lawsuit) has contacts with North Carolina.  This theory is untenable.  The general rule is that the relationship with the State "must arise out of contacts that the 'defendant *himself*' creates." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (U.S. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  Only in rare circumstances—for example, where a defendant has acted through an alter ego—will a court impute the contacts of one entity to another for purposes of personal jurisdiction.  *See State ex rel. Cooper v. W. Sky Fin., LLC*, 2015 NCBC LEXIS 87, at *15 (N.C. Super. Ct. Aug. 27, 2015) (North Carolina courts will disregard the corporate form only in "an extreme case where necessary to serve the ends of justice.").

26.    Those circumstances do not exist here.  Plaintiffs' brief does not address any of the usual alter-ego or veil-piercing factors (*e.g.*, undercapitalization and failure to comply with corporate formalities).  Even assuming Plaintiffs mean to assert such a theory, their entire evidentiary showing is a single paragraph in an affidavit of Boespflug, which states that Boespflug "visited Winston-Salem, North Carolina on May 21, 2017" and "noticed that Sanur and Viking appear to still operate an office there." (Boespflug 2d Aff. ¶ 37, ECF No. 77.)  This paragraph, which does not mention the foreign Defendants, is facially insufficient.  *See Strategic Outsourcing, Inc. v. Stacks*, 176 N.C. App. 247, 253, 625 S.E.2d 800, 804 (2006) (holding that the party asserting alter-ego liability must show the "complete domination" of the corporate entity, such that it had "no separate mind, will or existence of its own").

27. To the extent Plaintiffs are asserting a "civil conspiracy" theory of personal jurisdiction, it also fails. (Pls.' Resp. Br. 22.) "[T]he North Carolina Supreme Court has never adopted a conspiracy theory of personal jurisdiction." *Weisman v. Blue Mt. Organics Distrib., LLC*, 2014 NCBC LEXIS 41, at \*18 (N.C. Super. Ct. Sept. 5, 2014). Even assuming it is a valid theory, Plaintiffs' argument is confusing and unsupported by evidence. This Court again "declines any invitation to adopt the theory that appellate courts have not yet embraced." *Id.*

28. In short, Plaintiffs have not carried their burden to support the exercise of personal jurisdiction. There is no evidence of any "continuous and systematic" contacts between these ten Defendants and North Carolina giving rise to general jurisdiction. *Goodyear*, 564 U.S. at 919. And there is no evidence that the ten Defendants "purposely avail[ed]" themselves "of the privilege of conducting activities within" North Carolina, such that the exercise of specific jurisdiction would be appropriate. *Cambridge Homes of N.C. L.P. v. Hyundai Constr., Inc.*, 194 N.C. App. 407, 413, 670 S.E.2d 290, 296 (2008) (quoting *Lulla v. Effective Minds, LLC,* 184 N.C. App. 274, 279, 646 S.E.2d 129, 133 (2007)).

29. The Court also rejects Plaintiffs' alternative request for jurisdictional discovery. (*See* Pls.' Resp. Br. 22.) Whether to grant jurisdictional discovery is within the Court's discretion, but the party seeking discovery "must offer more than speculation or conclusory assertions about contacts with a forum state." *Pan-Am. Prods. & Holdings, LLC v. R.T.G. Furniture Corp.*, 825 F. Supp. 2d 664, 686 (M.D.N.C. 2011); *see also Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334

F.3d 390, 402–03 (4th Cir. 2003). Plaintiffs have not done so. Their "bare allegations in the face of specific denials made by defendants" do not warrant jurisdictional discovery. *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988); *see also Weisman*, 2014 NCBC LEXIS 41, at *18–19 (denying jurisdictional discovery).

30. The Court holds that it lacks personal jurisdiction over Ash Creek, Jay's Canby, Newby House, Richmond Park, River Valley Investors, Montpelier Investors, Jay's Canby Florence, Willamette River I, LLC, Willamette River I GP, and Victoria Place. The claims against these Defendants are dismissed with prejudice.

## B. Subject-Matter Jurisdiction

31. A court must have subject-matter jurisdiction to exercise authority over a case or controversy. *See Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987). The absence of subject-matter jurisdiction requires dismissal. *See* N.C. R. Civ. P. 12(h)(3). In deciding whether jurisdiction exists, the court may consider matters outside the pleadings. *See Tart v. Walker,* 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978).

### 1. Standing as to JPB Holdings (Claim 15)

32. The complaint states that Plaintiff JPB Holdings, Inc. "is a California corporation" that owns property and conducts business in North Carolina. (Am. Compl. ¶ 3.) Plaintiffs now concede this is false. Although JPB Holdings submitted articles of incorporation to the California Secretary of State on December 8, 2016, those articles were returned unfiled. (Aff. of Thomas J. Angstman in Supp. of Pls.'

Mot. to Sub. Party ¶¶ 4, 6, ECF No. 84.) As a result, JPB Holdings was never formed and does not exist. (Aff. of Angstman ¶ 9.)

33. Although Defendants do not challenge JPB Holdings's standing, this Court has inherent authority to consider its own jurisdiction. *See Willowmere Cmty. Ass'n v. City of Charlotte*, 792 S.E.2d 805, 808–09 (N.C. Ct. App. 2016). In North Carolina, a claim must be maintained by "a legal person, whether it be a natural person, *sui juris*, or a group of individuals or other entity having the capacity to sue and be sued, such as a corporation, partnership, unincorporated association, or governmental body or agency." *In re Coleman*, 11 N.C. App. 124, 127, 180 S.E.2d 439, 442 (1971). For a corporation to have the capacity to sue or be sued, it must be incorporated. *See Nelson v. Atl. Coast Line R.R. Co. Relief Dep't*, 147 N.C. 103, 103–04, 60 S.E. 724, 724 (1908) (holding that the unincorporated division of a corporation was not a natural person or artificial being that could be sued); *see also Doe v. Bayer Corp.*, 344 F. Supp. 2d 466, 468–69 (M.D.N.C. 2004) ("Thus, North Carolina does not confer capacity to sue or be sued on unincorporated parts of corporations.").

34. JPB Holdings lacks standing to bring suit because it was never incorporated. The Court therefore dismisses with prejudice its claim for breach of fiduciary duty (claim 15). To the extent JPB Holdings purports to join in any other claim brought by Boespflug and Azure Dolphin, those claims are also dismissed.

2. Judicial Dissolution (Claim 5)

35.     Plaintiffs' fifth claim for relief seeks a decree judicially dissolving each of the Investment Entities. (Am. Compl. ¶¶ 129–39.) The Court addresses this claim as it relates to the six Investment Entities that have not challenged personal jurisdiction.

36.     Four of these six Defendants are foreign entities:  two California LPs (Barton Boespflug II and Vintage Oak II) and two Oregon LLCs (Hess Creek and Royal Ascot).  They contend that this Court lacks subject-matter jurisdiction to dissolve an entity created under the laws of another State.  (*See* Br. in Supp. of Mot. to Dismiss 20–21, ECF No. 62.)  The Court agrees.

37.     This Court has held that "[j]udicial dissolution of entities created under, and granted substantial contractual freedom by, the laws of one state should be accomplished by a decree of a court of that state." *Camacho v. McCallum*, 2016 NCBC LEXIS 81, at *13–14 (N.C. Super. Ct. Oct. 25, 2016).  Courts in other jurisdictions have consistently reached the same conclusion.  *See, e.g.*, *In re Raharney Capital, LLC v. Capital Stack LLC*, 25 N.Y.S.3d 217, 217–18 (N.Y. App. Div. 2016) (holding that New York courts lack jurisdiction to dissolve Delaware LLC); *Young v. JCR Petroleum, Inc.*, 423 S.E.2d 889, 892 (W.Va. 1992) ("The existence of a corporation cannot be terminated except by some act of the sovereign power by which it was created."); *Mills v. Anderson*, 214 N.W. 221, 223 (Mich. 1927) ("It is textbook law that the courts of one State cannot dissolve a corporation created by another State.").

38.     This principle is reflected in the statutory regime governing limited liability companies and limited partnerships.  The North Carolina General Assembly has

conferred jurisdiction on this Court to enter a decree of judicial dissolution as to domestic entities, but not as to foreign entities. For example, this Court explained in *Camacho* that N.C. Gen. Stat. § "57D-6-02 applies only to an LLC formed under the North Carolina Act." 2016 NCBC LEXIS 81, at *11 (citing N.C. Gen. Stat. §§ 57D-1-03(13), (19)). The same is true of North Carolina's uniform partnership act: it limits this Court's authority to "decree dissolution of a limited partnership" only to a "limited partnership" formed "under the laws of this State." N.C. Gen. Stat. §§ 59-102(8), 802.

40. The complaint cites the laws of Oregon and California concerning judicial dissolution, but these statutes, enacted by other States, cannot confer jurisdiction on this Court. *See* Or. Rev. Stat. § 63.661 (permitting Oregon "circuit courts" to dissolve Oregon limited liability companies); Cal. Corp. Code § 15908.02(a) (authorizing California "court[s] of competent jurisdiction" to dissolve California limited partnerships). Because Oregon or California law "enables the formation" of these entities and governs their stakeholders' rights and duties, a decree of judicial dissolution must come, if at all, from the courts of those States. *Camacho*, 2016 NCBC LEXIS 81, at *13–14; *see also Valone v. Valone*, 80 Va. Cir. 45, at *4 (Va. Cir. Ct. Jan. 20, 2010) (holding court lacked jurisdiction to dissolve foreign limited partnership).

40. Plaintiffs do not address this law or provide any authority conferring jurisdiction on this Court to dissolve a foreign limited liability company or limited partnership. To the extent Plaintiffs address subject-matter jurisdiction at all, they

object that strict adherence to jurisdictional requirements may result in piecemeal litigation and a loss of judicial economy. (*See* Pls.' Resp. Br. 23.) Perhaps so, but convenience is no substitute for jurisdiction.

41. The Court also lacks jurisdiction, though for a different reason, as to the two North Carolina Investment Entities, Jay's Commonwealth Park, and Jay's Commonwealth Park Phase II. Under N.C. Gen. Stat. § 57D-6-02(2), only a member of an LLC has standing to assert a claim for judicial dissolution.

42. According to the complaint, Azure Dolphin is not a member of either entity. (*See* Am. Compl. ¶¶ 2, 4, 5.) Azure Dolphin therefore lacks standing to seek judicial dissolution.

43. The same is true for Boespflug. Although the complaint alleges that Boespflug holds a membership interest, he concedes that he entered into a security agreement with his attorneys, Angstman, Johnson & Associates, in which he "grant[ed] security interests in all of [his] rights, title and ownership interest in membership interests in" both North Carolina companies. (2d Aff. of Boespflug Ex. 9 § B, ECF No. 77.10.) Thereafter, Angstman, Johnson & Associates exercised its right to obtain possession of the collateral because of Boespflug's failure to pay his debt. (Jay's Commonwealth Park LLC's Aff. Ex. A.) In addition, Angstman, Johnson & Associates notified Barton that it had "accepted all of Mr. Boespflug's right title and interest in . . . Jay's Commonwealth Park, LLC, [and] Jay's Commonwealth Park Phase II, LLC" and is entitled to "all Mr. Boespflug's distributions payable on account of the companies listed above." (Jay's Commonwealth Park LLC's Aff. Ex. B.)

44. These transactions extinguished Boespflug's membership interest. Under N.C. Gen. Stat. § 57D-3-02, a member ceases to be a member if he "[e]xecutes an assignment for the benefit of creditors." Boespflug transferred his interests in Jay's Commonwealth Park and Jay's Commonwealth Park Phase II to his attorneys to satisfy a debt. He therefore lacks standing to seek a decree of judicial dissolution under N.C. Gen. Stat. § 57D-6-02(2).

45. For these reasons, the Court lacks subject-matter jurisdiction as to Plaintiffs' claim for judicial dissolution. The claim is dismissed with prejudice.

### 3. Removal of Barton as Manager (Claim 2)

46. Plaintiffs' second claim for relief requests a declaration removing Barton as manager of the Investment Entities. (Am. Compl. ¶¶ 106–10.) Again, the Court addresses this claim as it relates to the six Investment Entities that have not challenged personal jurisdiction.

47. Citing *Camacho*, the foreign Defendants contend that a North Carolina court lacks jurisdiction to interfere in the internal affairs of entities organized under the laws of other States. (Br. in Supp. 20–22; Defs.' 1st Br. in Supp. Mot. to Dismiss 11–12, ECF No. 14.) *Camacho* does not directly address this issue, and the Court instead concludes that it lacks jurisdiction for a different reason.

48. "Managers of limited liability companies are similar to directors of a corporation." *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 474, 675 S.E.2d 133, 137 (2009). North Carolina law is clear that a corporate director owes a fiduciary duty to the company, and an action to remove a director for mismanagement is

properly raised by the corporation, not by individual shareholders. *See, e.g.*, *Gwaltney v. Gwaltney*, 2017 NCBC LEXIS 11, at \*17 (N.C. Super. Ct. Feb. 8, 2017); *Greene v. Shoemaker*, 1998 NCBC LEXIS 4, at \*5, 8, 13–16 (N.C. Super. Ct. Sept. 24, 1998). For the same reason, an action to remove a manager of an LLC is derivative in nature and must be asserted by or on behalf of the LLC, rather than by an individual member. *See, e.g.*, *Kroupa v. Garbus*, 583 F. Supp. 2d 949, 953 (N.D. Ill. 2008) (applying Delaware law); *Mich II Holdings LLC v. Schron*, 2011 N.Y. Misc. LEXIS 7182, at \*11 (N.Y. Sup. Ct. June 16, 2011) (under New York law, claim for removal of manager is "a claim of the corporation"); *see also Freeman v. Premium Natural Beef, LLC*, 2013 U.S. Dist. LEXIS 138797, at \*17 (W.D. Okla. Sept. 27, 2013).

49. Plaintiffs therefore lack standing to assert this claim individually, and they have failed to take the steps necessary to bring a derivative claim. "A party's standing to bring a derivative claim depends on" compliance with "the demand requirement" in N.C. Gen. Stat. § 57D-8-01(a)(2). *Petty v. Morris*, 2014 NCBC LEXIS 67, at \*4 (N.C. Super. Ct. Dec. 16, 2014). Having made no demand as to any of the Investment Entities, Plaintiffs lack standing. *See Wirth v. Sunpath, LLC*, 2017 NCBC LEXIS 84, at \*13 (N.C. Super. Ct. Sept. 14, 2017). The claim is dismissed with prejudice.

### C. Failure to Join Necessary Parties

50. Plaintiffs allege that Barton wrongfully removed Boespflug as a member and "unilaterally amended the operating agreements of some or all of the Investment Entities." (Am. Compl. ¶ 178.) In their first and eleventh claims for relief, Plaintiffs request a declaration voiding these acts. Again, as to these claims, the Court limits

its analysis to the six Investment Entities that have not challenged personal jurisdiction.

51.     Defendants contend that the claims must be dismissed for failure to join all of the Investment Entities' members as necessary parties in the lawsuit. *See* N.C. R. Civ. P. 12(b)(7).  They cite the North Carolina Declaratory Judgment Act, which requires that, in an action for declaratory relief, "all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings."  N.C. Gen. Stat. § 1-260.

52.     Although Plaintiffs' brief ignores this issue, they previously conceded that the absent members are necessary parties in their opposition to Defendants' original motion to dismiss.  (*See* Pls.' Mem. in Supp. Mot. to Am. Compl. 15–16.)  Plaintiffs also amended the complaint to add some or all of these members as defendants but have since dismissed them from the suit.

53.     The Court concludes that the absent members of the Investment Entities are necessary parties under section 1-260.  The purpose of Plaintiffs' claim is to invalidate the Investment Entities' operating agreements and to alter their memberships.  Yet each of the Investment Entities has one or more members or owners who are parties to its operating agreement but are not parties to this litigation.  (*See* Am. Compl. ¶¶ 4, 5, 7, 8, 13, 14.)  Any declaration invalidating an operating agreement or altering the LLC's membership under the operating agreement would, "as a practical matter," adversely affect the rights of these

members.  *N.C. Monroe Constr. Co. v. Guilford County Bd. of Educ.*, 278 N.C. 633, 640, 180 S.E.2d 818, 822 (1971) (holding that a contracting party "is a necessary party in a proceeding to declare its contract . . . invalid").  Accordingly, this Court cannot "properly determine the validity of" the operating agreements without making each member "a party to the proceeding."  *Id.*; *see also Window World of St. Louis, Inc. v. Window World, Inc.*, 2015 NCBC LEXIS 79, at *15 (N.C. Super. Ct. Aug. 10, 2015).

54.     The remaining question is whether it is appropriate to dismiss the claim. Although "[n]ecessary parties must be joined in an action," *Bailey v. Handee Hugo's, Inc.*, 173 N.C. App. 723, 727, 620 S.E.2d 312, 316 (2005), precedent makes clear that "[d]ismissal under Rule 12(b)(7) is proper only when the defect cannot be cured," *Howell v. Fisher*, 49 N.C. App. 488, 491, 272 S.E.2d 19, 22 (1980).

55.     Here, any attempt to cure would be futile.  The complaint is clear that all of the additional parties reside outside North Carolina, and there are no allegations that would support the exercise of personal jurisdiction over them.  (*See* Am. Compl. ¶¶ 4, 5, 7, 8, 13, 14.)  Plaintiffs have had several opportunities to identify a basis for the exercise of jurisdiction, including in their briefs opposing the original and renewed motions to dismiss and in the amended complaint, which purported to name the members as defendants.  They have failed to do so.  Accordingly, the Court dismisses the eleventh claim for relief without prejudice.  *See Crosrol Carding Devs., Inc. v. Gunter & Cooke, Inc.*, 12 N.C. App. 448, 453, 183 S.E.2d 834, 838 (1971) (dismissal under Rule 12(b)(7) "is not a dismissal on the merits and may not be with prejudice").

D. <u>Rule 12(b)(6) Motion to Dismiss</u>

56. The Court, in deciding a Rule 12(b)(6) motion, treats the well-pleaded allegations of the complaint as true, *see Sutton v. Duke*, 277 N.C. 94, 98, 176 S.E.2d 161, 163 (1970), and views the facts in a light most favorable to the non-moving party, *see Ford v. Peaches Entm't Corp.*, 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). The Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers." *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001). Accordingly, a Rule 12(b)(6) motion should be granted only "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim." *Jackson v. Bumgardner*, 318 N.C. 172, 175, 347 S.E.2d 743, 745 (1986).

<u>1. Fiduciary Duty (Claim 6)</u>

57. Plaintiffs' sixth claim for relief is a combined claim for constructive fraud and breach of fiduciary duty. (Am Compl. ¶ 141–47.) Having voluntarily dismissed all claims against Viking Properties, Plaintiffs now continue to assert this claim against only Barton and Viking Property Investors.

58. Although Plaintiffs plead them together, the causes of action are different and require Plaintiffs to prove different elements. Nevertheless, an essential element of each claim is the existence of a fiduciary relationship. *See Dalton v. Camp*, 353 N.C. 647, 651, 548 S.E.2d 704, 707 (2001) (breach of fiduciary duty); *Crumley &*

*Assocs., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 620, 730 S.E.2d 763, 767 (2012) (constructive fraud). The Court limits its analysis to this element, which is dispositive.

59. A fiduciary relationship exists when a person places special confidence in a party who "is bound to act in good faith and in the best interest of the" person reposing the confidence. *Lynn v. Fed. Nat'l. Mortg. Ass'n*, 235 N.C. App. 77, 81, 760 S.E.2d 372, 375 (2014). North Carolina courts have identified two types of fiduciary relationships. The first type "arise[s] from 'legal relations'"—attorney and client, partners, principal and agent, and similar relationships. *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008) (quoting *Rhone-Poulenc Agro S.A. v. Monsanto Co.*, 73 F. Supp. 2d 540, 546 (M.D.N.C. 1999)). The second type includes relationships "that exist 'as a fact, in which there is confidence reposed on one side, and the resulting superiority and influence on the other.'" *Id.*

60. According to Plaintiffs, "Boespflug reposed trust and confidence in Barton to manage and control" the various Investment Entities and their properties. (Pls.' Br. 7 (citing Am. Compl. ¶¶ 54, 62, 63, 76).) The amended complaint alleges that Barton became the entities' manager "because he claimed that he possessed more experience and expertise" and "held himself out as a real estate investment expert." (Am. Compl. ¶¶ 54, 62.) As a result, "Boespflug placed Barton in a position of trust and gave him some discretion to manage the Properties, reporting to Boespflug intermittently on the state of the portfolio." (Am. Compl. ¶ 63.)

61.     Plaintiffs have not adequately alleged the existence of a fiduciary relationship.  It is well-settled that, as a matter of law, a manager of an LLC does not owe a fiduciary duty to its members.  *See Kaplan*, 196 N.C. App. at 474, 675 S.E.2d at 137.  The allegation that Barton managed the Investment Entities is therefore insufficient to establish a fiduciary relationship between Barton (as manager) and Boespflug (as member or former member).

62.     The complaint also fails to meet the "demanding" standard for alleging that a fiduciary relationship exists as a fact.  *Lockerman v. S. River Elec. Membership Corp.*, 794 S.E.2d 346, 352 (N.C. Ct. App. 2016).  The picture painted by the complaint is one in which both men played a key role:  Boespflug contributed most of the capital while Barton contributed most of the real estate expertise.  (Am. Compl. ¶¶ 53–54, 56–57.)  As alleged, neither held "all the financial power or technical information" or exercised dominion and influence over the other.  *Lockerman*, 794 S.E.2d at 352 (quoting *S.N.R.*, 189 N.C. App. at 613, 659 S.E.2d at 451).

63.     Accordingly, Plaintiffs have failed to state a claim for constructive fraud or breach of fiduciary duty.  The sixth claim for relief is dismissed with prejudice.

2. Fraudulent Conveyance (Claim 13)

64.     Plaintiffs assert their claim for fraudulent conveyance against four Defendants: Janet Barton, Viking Property Investors, Montpelier Investors, and Jay's Canby Florence.  (Am. Compl. ¶ 190.)  The Court lacks personal jurisdiction over the latter two Defendants and therefore addresses this claim only as to Janet Barton and Viking Property Investors.

65. Defendants contend the claim should be dismissed because it does not "specifically identify the property transferred, the timing of the transfer, and the consideration paid for the property" as required by Rule 9 of the North Carolina Rules of Civil Procedure. (Defs.' 1st Br. in Supp. 23; *see also* Br. in Supp. 34.) Plaintiffs offer no response in their brief and do not make any affirmative argument in support of the claim.

66. Defendants' argument is compelling. Rule 9 requires that "[i]n all averments of fraud, duress or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." This requirement encompasses fraudulent conveyance. *See Doby v. Lowder*, 72 N.C. App. 22, 27, 324 S.E.2d 26, 29–30 (1984).

67. Here, the allegations do not come close to satisfying Rule 9. Plaintiffs' claim for relief is vague and conclusory, alleging that they are entitled to recover "real property, proceeds from that property and/or revenue streams associated with the property." (Am. Compl. ¶ 193.) Of the three transfers of property identified elsewhere in the complaint, none involves Janet Barton. (*See* Am. Compl. ¶¶ 116, 118, 119.) And the only allegation as to Viking Property Investors does not specifically identify the property conveyed or when the transaction allegedly occurred. (*See* Am. Compl. ¶ 118.)

68. These allegations are not sufficiently particular under Rule 9. Plaintiffs' thirteenth claim for relief is dismissed with prejudice.

### 3. Section 75-1.1 (Claim 14)

69. Plaintiffs' fourteenth claim for relief is for a violation of section 75-1.1. As filed, the amended complaint asserted this claim against nine Defendants. (Am. Compl. ¶ 203; *see also* Am. Compl. ¶ 27.) Plaintiffs voluntarily dismissed all claims against two entities (Viking Properties and Sanur Brokerage), and the Court lacks personal jurisdiction over four others (Montpelier Investors, Jay's Canby Florence, Willamette River I, LLC, and Victoria Place). The remaining three Defendants are Justin Barton, Janet Barton, and Viking Property Investors.

70. A violation of section 75-1.1 occurs if a defendant commits an "unfair or deceptive act or practice" that is "in or affecting commerce" and "proximately cause[s] injury." *Bumpers v. Cmty. Bank of N. Va.*, 367 N.C. 81, 88, 747 S.E.2d 220, 226 (2013). Plaintiffs rely on the alleged "instances of fraud, constructive fraud, and fraud by omission" to show an unfair or deceptive act. (Am. Compl. ¶ 202.) Having determined that Plaintiffs did not adequately allege facts to support their claims for constructive fraud and fraudulent conveyance (the only "fraud" claims asserted in their complaint), the Court further concludes that Plaintiffs have not alleged facts to show that Defendants committed an unfair or deceptive act under section 75-1.1. The claim is dismissed with prejudice.

### 4. Civil Conspiracy (Claim 12)

71. Plaintiffs' twelfth claim is for civil conspiracy. (Am. Compl. ¶¶ 185, 187.) Plaintiffs voluntarily dismissed their claims against two of three alleged co-conspirators, Sanur Brokerage and Viking Properties. The Court concludes that

Plaintiffs have failed to state a claim against the only remaining co-conspirator, Barton, because there is no independent claim for civil conspiracy in North Carolina. Rather, "civil conspiracy claims" are premised on some underlying unlawful conduct. *Williams v. United Cmty. Bank*, 218 N.C. App. 361, 371, 724 S.E.2d 543, 550–51 (2012); *Esposito v. Talbert & Bright, Inc.*, 181 N.C. App. 742, 747, 641 S.E.2d 695, 698 (2007). Here, the conspiracy claim depends on the underlying "fraud" claims, which the Court has dismissed. (Am. Compl. ¶ 185.) Therefore, Plaintiffs' conspiracy claim is likewise dismissed with prejudice.

5. Remedies (Claims 3, 4, 8, and 10)

72. Plaintiffs assert four purported "claims for relief" for injunction, appointment of a receiver, constructive trust, and punitive damages. (Am. Compl. ¶¶ 111–21, 155–61, 168–76.) All are *remedies*, not *causes of action*. *See Porter v. Armstrong*, 132 N.C. 66, 67, 43 S.E. 542, 542 (1903) (noting that a complaint must "state a cause of action on which to procure an injunction," which is a remedy); *Collier v. Bryant,* 216 N.C. App. 419, 434, 719 S.E.2d 70, 82 (2011) ("Punitive damages are available, not as an individual cause of action, but as incidental damages to a cause of action."); *Weatherford v. Keenan*, 128 N.C. App. 178, 179, 493 S.E.2d 812, 813 (1997) ("Defendant errs when he suggests that a constructive trust is a cause of action rather than a remedy."); *Camacho*, 2016 NCBC LEXIS 81, at *31 ("Appointment of a receiver is a rare and drastic remedy"). Having dismissed all of Plaintiffs' underlying causes of action, the Court also grants the motion to dismiss these remedial claims.

## IV.
## CONCLUSION

73.    For these reasons, the Court **GRANTS** Defendants' motion.

This the 2nd day of October, 2017.

                          /s/ Adam M. Conrad
                          Adam M. Conrad
                          Special Superior Court Judge
                           for Complex Business Cases